Kathy M. KAHN, Plaintiff,
v.
Daniel J. STURGIL, Defendant.
No. C–74–273–W.

United States District Court,
M. D. North Carolina,
Wilkesboro Division.
March 7, 1975.

Gaston H. Gage, Charlotte, N. C., for plaintiff.

Ralph M. Stockton, Jr., and James H. Kelly, Jr., Winston-Salem, N. C., for defendant.

## MEMORANDUM OPINION

GORDON, Chief Judge.

On or about February 28, 1969, plaintiff and defendant were involved in an automobile collision within the Middle District of North Carolina. On October 21, 1971, plaintiff initiated a civil action in the Superior Court of Mecklenburg County which was subsequently transferred to the Superior Court of Alleghany County. On September 25, 1973, the plaintiff took a voluntary dismissal of that action pursuant to N.C.G.S. § 1A–1, Rule 41(a) North Carolina Rules of Civil Procedure. The instant action was filed in Federal Court on September 5, 1974, and in all material respects is identical to that dismissed in the Superior Court on September 25, 1973. Defendant has moved to dismiss pursuant to Rule 12, F.R.Cv.P., on the grounds that plaintiff failed to pay the costs of the voluntarily dismissed state court action as required by Rule 41(d) of the North Carolina Rules of Civil Procedure.

Rule 41(a)(1) of the North Carolina Rules of Civil Procedure provides:

"Rule 41. Dismissal of actions.

(a) Voluntary dismissal; effect thereof.—

(1) By Plaintiff; by Stipulations.— Subject to the provisions of Rule 23(c) and of any statute of this State, an action or any claim therein may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before the plaintiff rests his case, or; (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this or any other state or of the United States, an action based on or including the same claim. *If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal unless a stipulation filed under (ii) of this subsection shall specify a shorter time."* (Emphasis added)

Further, subsection (d) of North Carolina Rule 41 provides:

"(d) Costs.—A plaintiff who dismisses an action or claim under section (a) of this rule shall be taxed with the costs of the action unless the action was brought in forma pauperis. If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant before the payment of the costs of the action previously dismissed, unless such previous action was brought in forma pauperis; the court, upon motion of the defendant, shall dismiss the action."

Defendant's motion is based on a double-edged argument of substantial merit and

deceptive complexity.[1] Defendant contends that since plaintiff did not pay the costs of the prior action this Court, pursuant to the last sentence of subsection (d), *supra,* must dismiss this subsequent action. On the other hand, it is contended that if the Court should not consider itself bound by this provision of the North Carolina Rules, plaintiff cannot rely upon the one year saving provision of subsection (a) of the rule, and her action is, therefore, barred by the applicable three-year statute of limitations.[2]

In the Court's judgment the difficult legal issue in this motion and the one which must first be addressed is the question of what law to apply. Rule 41(d) of the Federal Rules of Civil Procedure provides:

> "(d) *Costs of Previously Dismissed Action.* If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order."

Two important observations about this subsection are in order. First, the remedial measures provided for the failure of a plaintiff to pay the costs of a previously dismissed action are in direct conflict with that set forth in Rule 41(d) of the North Carolina Rules. Secondly, the rule expressly provides that it is applicable to a plaintiff who has once dismissed an action *in any court.* The question of which rule should be applied by this Court, sitting with diversity jurisdiction, falls squarely within the thicket of one of the more complex and theoretically difficult areas of federal court jurisdiction.[3]

Because of its eventual conclusion, infra, that the plaintiff did not fail to pay the costs of the prior action within the meaning of North Carolina Rule 41(d), the Court will not unnecessarily digress in analyzing the problem of which rule to apply. However, a brief outline of the Court's reasoning is appropriate.

Generically, the issue falls within the scope of the Erie Doctrine,[4] and more particularly, within that species of Erie problems characterized by such cases as Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L. Ed. 1520 (1949); Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U. S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); and Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The standard or test which should be followed in determining whether to apply the state or the federal rule has undergone continual evolution and substantial refinement since Erie Railroad v. Tompkins was decided.[5]

In Szantay v. Beech Aircraft Corporation, 349 F.2d 60 (4th Cir. 1965), our Court of Appeals had occasion to review

---

1. Indeed, as discussed, *infra,* the real legal issue in this motion went unnoticed and unbriefed by both parties.

2. N.C.G.S. § 1–52.

3. *Compare, e. g.,* Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), *with* Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed. 2d 8 (1965). *See generally,* C. Wright, The Law of Federal Courts, § 59 (2d Ed. 1970); and H. Hart and H. Wechsler, The Federal

Courts and the Federal System, pp. 719–755 (2d Ed. 1973).

4. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. In *Erie, supra,* note 4, the line was drawn between procedural and substantive law. In the *Guaranty Trust* case, *supra,* the so-called "outcome-determinative" test was set forth. In *Byrd, supra,* the Court spoke in terms of "countervailing federal considerations" while enunciating a more liberal balancing approach.

and consider the evolution of the Erie Doctrine and its current import to a district court with diversity jurisdiction and a federal-state conflict. The *Szantay* Court arrived at a helpful analytical scheme.

"The spirit of these decisions makes it appropriate for a court attempting to resolve a federal-state conflict in a diversity case to undertake the following analysis:

"1. If the state provision, whether legislatively adopted or judicially declared, is the substantive right or obligation at issue, it is constitutionally controlling.

"2. If the state provision is a procedure intimately bound up with the state right or obligation, it is likewise constitutionally controlling.

"3. If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply it unless there are affirmative countervailing federal considerations. This is not deemed a constitutional requirement but one dictated by comity." 349 F.2d at 63–64.

■ It would appear that North Carolina Rule 41(d) is related to the tolling provision of Rule 41(a) in the manner described in the second category of the *Szantay* test.[6] However, Hanna v. Plumer, *supra,* makes it clear that the countervailing federal considerations inherent in the Federal Rules of Civil Procedure are paramount regardless of the intimacy of the relationship between a state procedural provision and a substantive right or obligation when the state rule and the federal rule are in irreconcilable conflict.

*Hanna* involved the conflict between the manner for service of process prescribed by Rule 4(d)(1) of the Federal Rules and a specific Massachusetts statutory provision requiring in hand service of process in certain actions against executors and administrators. In holding that Rule 4(d)(1) of the Federal Rules must prevail over the state statute the Court said:

"The *Erie* rule has never been invoked to void a Federal Rule. It is true that there have been cases where this Court has held applicable a state rule in the face of an argument that the situation was governed by one of the Federal Rules. But the holding of each such case was not that *Erie* commanded displacement of a Federal Rule by an inconsistent state rule, but rather that the scope of the Federal Rule was not as broad as the losing party urged, and therefore, there being no Federal Rule which covered the point in dispute, *Erie* commanded the enforcement of state law." 380 U.S. at 470, 85 S.Ct. at 1143.

In reviewing the *Hanna* decision, Professor Wright has concluded that:

"[T]here no longer is an Erie problem on matters covered by the Civil Rules. If the rule is valid, and if it applies to the case, it is controlling, and no regard need be paid to contrary state provisions.

"The Hanna case contributes needed clarity and simplicity of application to what had been a very confused area of the law. It lightens the burden on the federal courts since they need not concern themselves with Erie problems

---

6. In footnote 5, 349 F.2d at 63, the *Szantay* Court indicated that the procedural provisions at issue in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); and Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), were all of this type. Since compliance with N.C.Rule 41(d) is a condition precedent to obtaining the benefit of the tolling provision of Rule 41(a), it is felt that the present controversy also falls within this definition.

if. one of the rules is applicable." Wright, *supra* note 3, at 245.

■ North Carolina Rule 41(d) is explicit and mandatory in its direction to the court to dismiss an action brought by a plaintiff who has not paid the costs of a previous similar action dismissed pursuant to Rule 41(a). Sims v. Oakwood Trailer Sales Corp., 18 N.C.App. 726, 198 S.E.2d 73 (1973); Cheshire v. Bensen Aircraft Corp., 17 N.C.App. 74, 193 S.E.2d 362 (1972). Federal Rule 41(d) speaks to the same evil but provides for far different remedial measures. The federal rule gives the court discretion to insure that the costs of the prior action are paid before the second action is allowed to proceed. 9 Wright & Miller, Federal Practice and Procedure: Civil § 2375. Although the federal rule might well authorize eventual dismissal of a recalcitrant plaintiff via Rule 41(b), perfunctory dismissal as prescribed by North Carolina Rule 41(d) is clearly not contemplated or authorized. As in *Hanna*, the situation here is not one where the federal rule fails to reach an issue covered by a state rule, but rather one where the two rules are in conflict. Therefore, it is concluded that the federal rule must prevail, and this Court upon a reliable showing of the costs remaining unpaid by plaintiff from the previous action dismissed in the Superior Court of Alleghany County will order them paid.

■ Defendant further contends that if North Carolina Rule 41(d) is not followed by this Court, then plaintiff may not rely upon the provision of Rule 41(a) permitting him to reinstitute suit within one year of the prior dismissal. The Court does not agree. The flaw in this argument is that it assumes that North Carolina Rule 41 must either be accepted in whole or rejected in whole. Such is not the Court's understanding of

the Erie Doctrine. The tolling of a state statute of limitation in a diversity case is strictly a substantive matter of state law which *Erie* commands that we follow absent substantial countervailing federal interests.[7] Here there is no federal-state conflict with respect to North Carolina Rule 41(a), ergo there is no need to engage in a *Szantay* analysis for there are no federal interests to consider. Having held that plaintiff has properly brought this action in federal cour⁺, pursuant to Federal Rule 41(d), and finding that her action was commenced within one year of her voluntary dismissal in state court, the requirements of North Carolina Rule 41(a) are met and the plaintiff is entitled to the benefit of the tolling provision.

■ All that has been said is explanatory of what the Court considers to be the proper analytical approach to this motion. Nevertheless, it should be made clear that the determination to deny defendant's motion would not be changed by strict adherence to North Carolina Rule 41(d) as defendant suggests. By way of an alternative holding, the Court finds that plaintiff would not be dismissed or barred from reinstituting her suit had she brought it in the North Carolina state courts.

Plaintiff gave notice of dismissal pursuant to North Carolina Rule 41(a) on September 25, 1973. On September 26, 1973, plaintiff's attorney sent the following letter to the Clerk of the Superior Court of Alleghany County:

"Hon. Glenn Busic
Clerk of Superior Court
Alleghany County
Sparta, North Carolina

"Re: Kathy M. Kahn v. Daniel J. Sturgil 71–CvS–12728

"Dear Mr. Busic:

"Thank you for the return of the copy of the notice of dismissal marked

---

7. *See* Atkins v. Schmutz Manufacturing Company, 435 F.2d 527 (4th Cir. 1970), for a cogent discussion of Erie Doctrine principles in relation to a state-federal conflict involving a state statute of limitation.

"Filed September 25." I trust that all or most of the court costs have been paid but would appreciate your forwarding a bill of costs to me reflecting the amount paid and unpaid.

Very truly yours,

Gaston H. Gage"

Several days later, and apparently in response to the above letter, plaintiff's attorney received in the mail from the Clerk of Superior Court of Alleghany County a printed form document entitled, "CIVIL COSTS BILL, Trial Division, General Court of Justice." This document recites several fees charged and under "TOTAL COSTS ASSESSED" shows a "Cumulative Total" of $11.00. Slightly below and beside the figure "$11.00" are the handprinted letters "Pd" which are double underlined. In support of his motion defendant offers the affidavit of Glenn Busic the Clerk of the Superior Court of Alleghany County which indicates that plaintiff has not paid two $2.00 subpoena fees incurred and paid for by defendant in preparation for trial in the state court. It is these costs, totaling $4.00, which forms the basis of defendant's motion.

Both parties have devoted their briefs to a comprehensive review of the North Carolina decisional law concerning failure to pay the costs of a prior action and possible excuse therefrom for good cause shown. A study of these cases and their relevant principles indicates that the North Carolina Courts would find plaintiff's failure to pay $4.00 in costs excused, and her action not subject to dismissal pursuant to Rule 41(d) of the North Carolina Rules of Civil Procedure. Hunsucker v. Corbitt, 187 N.C. 496, 122 S.E. 378 (1924); Galligan v. Smith, 14 N.C.App. 220, 188 S.E.2d 31 (1972).

The present case is clearly distinguishable from *Galligan*. Indeed, dicta in the *Galligan* opinion indicates that the "good cause shown" exception of *Hunsucker* is still good law, and that a North Carolina court would find that plaintiff in the instant action had met that burden. 14 N.C.App. at 225, 188 S.E.2d at 35. Here plaintiff's attorney wrote the Clerk of Superior Court the day after giving notice of dismissal; asked for a bill of costs in a manner inescapably implying that he wanted a final, complete bill; and received in response from the Clerk an official bill of costs marked paid.[8] Moreover, the costs charged the plaintiff on the official Bill of Costs are different from and irreconcilable with the costs charged plaintiff as set out in the affidavit of Superior Court Clerk Busic.[9] Finally, the defendant's own evidence (Busic's affidavit) indicates that plaintiff has paid $27.00 of a $31.00 court costs bill. When asked by the Court at the hearing on this motion what plaintiff could have done that she did not do in order to be sure that all costs were paid, counsel for defendant responded that he knew of nothing.

Under these facts and circumstances, it is inconceivable that the North Carolina Supreme Court would not excuse plaintiff's failure to pay $4.00 in costs. Accordingly, plaintiff would be entitled to the benefit of the provision of North Carolina Rule 41(a) tolling the statute of limitations for one year. Any other result in this case would be unconsciona-

8. The court notes that in addition to being incomplete, the Bill of Costs was apparently also improperly filled out in that the costs charged to plaintiff were all listed in a column entitled "District Court, Judge."

9. At the oral hearing on this motion defendant's counsel indicated that the Clerk of Superior Court had been notified on September 25, 1973, of the two $2.00 subpoenas fees incurred by defendant. If this is so, why weren't these charges shown on the Bill of Costs which was sent to plaintiff's attorney several days later? The Bill of Costs does reflect a $4.00 charge for two subpoenas, but since all charges on the Bill of Costs are marked paid the confusion is only compounded.

ble, unreasonable, and serve only to establish a Procrustean interpretation of Rule 41(d), North Carolina Rules of Civil Procedure.