Irving **FREEDMAN**, Plaintiff,

v.

**BENEFICIAL CORPORATION, a Delaware corporation, and Beneficial Management Corporation, a Delaware Corporation, Defendants.**

Civ. A. No. 4541.

United States District Court,
D. Delaware.

Dec. 24, 1975.

918

Steven D. Goldberg, of Theisen, Lank & Mulford, Wilmington, Del., and Richard S. Masington and Stuart Z. Grossman, of Spence, Payne & Masington, P. A., Miami, Fla., for plaintiff.

E. Norman Veasey and R. Franklin Balotti, of Richards, Layton & Finger, Wilmington, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

Plaintiff Irving Freedman has brought this diversity action against defendants Beneficial Corporation and Beneficial Management Corporation seeking compensatory and punitive damages for the alleged use and publication of a plan, submitted to defendants in confidence and in expectation of remuneration and designed to enhance the profitability of defendants' business activities. Defendants have moved for summary judgment pursuant to Rule 56(b), F.R.Civ.P., and in their briefs and at argument the parties have contested two issues. The defendants assert, first, that essential elements of each of plaintiff's several theories for relief are lacking and, second, that plaintiff's claim is barred by the statute of limitations.

Beneficial Corporation, through its operating subsidiaries, engages in the small loan business throughout the United States. On May 12, 1967, plaintiff, by his attorney Muchnick, notified defendants that he had developed a business idea that would "substantially increase small loan volume accounts" and offered "a profitable by-product service."[1] On May 18, 1967, defendants acknowledged receipt of Muchnick's letter and stated that it had been referred to Barylick who was in charge of business development. Communication by telephone between Muchnick and Barylick on March 27, 1968 resulted in the forwarding to the defendants on April 3, 1968 of a fairly detailed summary of plaintiff's proposal. His anticipated compensation for use of his idea was also set forth. Plaintiff proposed that defendants make loans based on borrowers' expected federal income tax refunds—"immediate tax refunds"; the tax refund checks, which would be assigned to defendants, would be a form of collateral security. Furthermore, defendants were advised to enter the tax return preparation business. By letter of May 6, 1968, Muchnick confirmed a May 3, 1968 conversation with Barylick who reported that the plan was under consideration. However, on May 23, 1968, Barylick notified Muchnick that the defendants could not "participate in the arrangement."

Plaintiff in January, 1971, learned for the first time that defendants had implemented a program that provided for "instant tax refunds" and a tax preparation service at their loan offices. The defendants had considered developing such a program during 1968 and a formal proposal on tax preparation activities was submitted to the management committee on April 21, 1969.[2] By November 3, 1969, the concept of the "instant tax refund" had been formulated.[3] The plan was advertised initially in *The Atlanta Constitution* on November 13, 1969,[4] and it apparently went into operation in the "tax season" of 1970.

---

1. Correspondence between defendants and Muchnick appears as Exs. A–F, Docket Item 20.

 In developing the background necessary for an understanding of the legal arguments, the Court in a matter of fact manner may make statements which are vigorously contested by the parties. In spite of these concessions to convenience, the Court, of course, in no way expresses any views on the ultimate resolution of the factual disputes.

2. Docket Item 37A, Ex. 2.

3. Docket Item 37A, Ex. 3.

4. Docket Item 32, par. 3. Plaintiff, a resident of Miami, Florida, was not aware of this advertisement. The advertisement read:

 INSTANT TAX REFUND.
 No need to wait for your Federal or State tax refund check! Beneficial advances you the cash when you sign your tax returns! Let Beneficial prepare your income tax return. Get all the deductions you're entitled to. A Beneficial-prepared return is guaranteed 100% accurate, double-checked by computer.
 If you find you have a refund coming, you don't have to wait for it. We'll be glad to advance you the cash—with an on-the-spot loan—as soon as you sign the returns. It's the instant Tax Refund—only at Beneficial.

 Starting January 1970.
 BENEFICIAL
 INCOME TAX SERVICE
 Beneficial Finance Co. of Atlanta
 42 Forsyth Street, N.W.
 Atlanta"

Plaintiff filed suit in this court on December 19, 1972. His causes of action were delineated in five counts: wrongful appropriation of property; contract implied in fact; contract implied in law (quasi contract); conversion; and conspiracy.[5]

Summary judgment "is never warranted except on a clear showing that no genuine issue as to any material fact remains for trial," *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (C.A.3, 1974), *quoting Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (C.A.7, 1972), and, moreover, the evidence "must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Brandywine One Hundred Corp. v. Hartford Fire Ins. Co.*, 405 F.Supp. 147 (D.Del. 1975). With these principles in mind, the Court now turns to the contentions of the parties.

█ Defendants' first argument in support of their motion for summary judgment is based on their claim that plaintiff cannot prevail on any of his causes of action. The Court has reviewed the affidavits, depositions, and answers to interrogatories but, while it has doubts about the viability of some of plaintiff's theories for recovery,[6] is unable to conclude "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. Also, in light of the complexity of this case and plaintiff's necessary reliance on circumstantial evidence, the Court, in the exercise of its discretion, finds that summary judgment on this ground would be inappropriate. *John Blair & Co. v. Walton*, 47 F.R.D. 196, 197 (D.Del.1969).

Defendants also argue that the applicable statute of limitations bars plaintiff's suit in this court. In order to resolve this issue, it is necessary to apply the appropriate statute of limitations to each of plaintiff's causes of action.

█ A federal district court in a diversity action applies the statute of limitations that the forum state would apply. *Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 73 S.Ct. 856, 97 L.Ed. 1211 (1953); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Delaware has a "borrowing statute," 10 Del.C. § 8121, which provides in pertinent part:

"Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action."

Thus, each cause of action set forth in plaintiff's complaint must be tested against both the appropriate Delaware statute of limitations and the appropriate statute of limitations for the state in which the cause of action arose.[7] However, opposing counsel have agreed that there is no period of limitations shorter than the three year period specified in Delaware's applicable statute of limita-

---

**5.** The sixth count, punitive damages, should have been denominated a prayer for relief and is not an independent basis for recovery.

**6.** For instance, the causes labeled appropriation and conversion are essentially different aspects of the same basic wrong; they are both subsumed by the more traditional perception of the tort of conversion. Respected authority can be cited for the proposition that there cannot be conversion of an idea. Prosser, The Law of Torts § 15, pp. 82–83 (1971).

Also, there are serious conceptual difficulties with creating an implied in fact contract in the face of an express rejection of any contractual relationship. *E. g., Lueddecke v. Chevrolet Motor Co.*, 70 F.2d 345, 348 (C.A.8, 1934).

These cursory comments should not be viewed as the Court's tentative conclusions. Instead, they are designed to indicate to the parties a few of the more difficult questions that ultimately must be resolved.

**7.** The causes of action arguably arose in Delaware, New Jersey, Florida, or Georgia (conversion count only). The Court need not now decide these questions.

tions. 10 Del.C. § 8106.[8] The five causes of action will be considered separately.

### 1. *Wrongful Appropriation of Property.*

██ Under this heading, plaintiff essentially alleges that the defendants took his idea and without permission employed it for their own benefit. The three year statute of limitations is applicable to this claim because it is an "action to recover damages caused by an injury unaccompanied with force." 10 Del.C. § 8106. Causes of action sounding in tort, such as this one, accrue at the time of injury, *Howmet Corp. v. City of Wilmington*, Del.Super., 285 A.2d 423, 425 (1971); *Nardo v. Guido DeAscanis & Sons, Inc.*, Del.Super., 254 A.2d 254, 256 (1969); *Leibowitz v. Hicks*, Del.Ch., 42 Del.Ch. 209, 207 A.2d 371, 372 (1965), and the statute of limitations starts to run at that time. *Hood v. McConemy*, 53 F.R.D. 435, 445 (D.Del.1971); *Bradford, Inc. v. Travelers Indemnity Co.*, Del.Super., 301 A.2d 519, 524 (1972).[9] Plaintiff's injury occurred, and therefore his right to sue accrued, when defendants used his idea in a manner inconsistent with his ownership rights. The plan allegedly implementing plaintiff's idea was announced to the public in November, 1969, and it is uncontroverted that several months had been required to prepare the plan for implementation. The defendants' actions were thus inconsistent with plaintiff's rights when they began adapting and formulating the idea to the needs of their own enterprise. The plaintiff was damaged at that time rather than the date of the first market use. Thus, because the injury arose before November 13, 1969, more than three years before the filing of this suit in this court, this cause of action is time barred by 10 Del.C. § 8106 unless the statute of limitations was tolled.

### 2. *Contract Implied in Fact.*

██ Plaintiff argues that defendants' conduct indicating that he would be compensated for the use of his idea and his submission of the idea to defendants with the expectation of compensation if it were used justify finding the requisite contractual consent. Thus, plaintiff argues that defendants' use of his idea would be a breach of a contract implied in fact. The three year statute of limitations also applies to this cause of action because it is either an "action based on a promise" (promise implied) or an "action to recover damages caused by an injury unaccompanied with force." 10 Del.C. § 8106. The statute of limitations begins to run when the contract is breached, *Lembert v. Gilmore*, Del.Super., 312 A.2d 335, 337 n.3 (1973), and the breach of the implied in fact contract occurred when the defendants began to use plaintiff's idea for their own benefit. Thus, plaintiff's cause of action for breach of an implied contract accrued when his idea was appropriated by defendants, and, as with the appropriation count, this happened outside the three

---

**8.** 10 Del.C. § 8106 provides:

"No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the

provisions of §§ 8108–8110, 8119 and 8127 of this title."

**9.** Reliance by this Court on decisions by Delaware's Court of Chancery and Superior Court, especially where they are consistent with the general development of Delaware law on the statute of limitations, is not misplaced. *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 178–80, 61 S.Ct. 176, 85 L.Ed. 109 (1940). "A federal judge sitting in a diversity jurisdiction case has not a roving commission to do justice or to develop the law according to his, or what he believes to be the sounder, views." *Pomerantz v. Clark*, 101 F.Supp. 341, 345 (D.Mass. 1951). Moreover, this Court is not inclined to disagree with these state court interpretations.

year period prior to the commencement of this litigation. Therefore, unless the statute of limitations was tolled, the cause of action based on an implied contract is also time barred.

### 3. Contract Implied in Law (Quasi Contract).[10]

 Plaintiff contends that he is entitled to remuneration for the use of his idea because the defendants voluntarily accepted and used something of value which he had sent to them with a reasonable expectation of compensation. Initially, the Court must determine if 10 Del.C. § 8106 is applicable to an action in the nature of quasi contract. See Restatement, Restitution § 148(2). Apparently, § 8106 was designed to encompass all contractual claims except for those specifically considered elsewhere. Furthermore, this cause of action, essentially one of unjust enrichment, would seem to fit within the scope of an "action to recover damages caused by an injury unaccompanied with force." 10 Del.C. § 8106. In Levine v. Levine, 209 F.Supp. 564 (D.Del.1962), 10 Del.C. § 8106 was held inapplicable in a quasi contract action brought by a wife for support payments spanning almost thirty years against her former husband who had deserted her and their children. The last date on which defendant owed his wife support was more than six years before the suit was filed. The opinion's broad generalization that Delaware's statute of limitations does not apply to quasi contract actions is misleading because the generic term quasi contract covers several different situations where a legal remedy is needed, and, thus, the underlying elements must be analyzed to determine

if the particular quasi contract action comes within the scope of the statute of limitations.[11] In Levine, there was an important public interest at stake—the duty of a husband to support his wife. "Laws concerning the family unit have always occupied a unique position and have usually been given a specialized treatment." Doe v. Doe, Del.Super., 214 A.2d 558, 559 (1965). On the other hand, the plaintiff here is seeking relief in the classic contract-tort sense. He has set forth several theories for recovery which do not differ greatly from his quasi contract theory, and, if his other causes of action are time barred, the Court should not strain to find an exception to a consistent statutory pattern. In sum, the mere labeling of an action as one in the nature of quasi contract is not enough to avoid the impact of the statute of limitations.

 The quasi contract was developed by the law courts as a device for creating a "contract" to remedy the absence of mutual promises under circumstances where it is necessary to preclude the unjust retention of an advantage or benefit. For determining when the limitations period starts to run, however, the quasi contract can be treated as a standard contract because the cause of action accrues when the "contract" is breached. Although it is possible that, if the parties had entered into a contract, payment would not have been due until the program was actually implemented, plaintiff had a right to sue under this theory as soon as defendants began using his idea for their benefit. If the defendants appropriated his idea, they used the idea during the pre-implementation development program of the summer and fall of

---

10. It is important to remain aware of the distinctions between contracts implied in fact and contracts implied in law. In the former, the Court determines from the circumstances that the parties have indicated their assent to the contract. In the latter, however, the law creates an obligation "for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent." 1 Corbin on Contracts §§ 18–19 (1963). See Van Rensselaer v. General Motors Corp., 223 F.Supp. 323 (E.D.Mich.1962), aff'd, 324 F.2d

354 (C.A.6, 1963), cert. denied, 377 U.S. 959, 84 S.Ct. 1640, 12 L.Ed.2d 502, reh. denied, 379 U.S. 874, 85 S.Ct. 26, 13 L.Ed.2d 82, 379 U.S. 951, 85 S.Ct. 435, 13 L.Ed.2d 549 (1964); Deskovick v. Porzio, 78 N.J.Super. 82, 187 A.2d 610 (App.Div.1963).

11. For example, a quasi contract action against a decedent's estate would appear to be limited by 10 Del.C. § 8113, or a quasi contract action for personal services would seem to be covered by 10 Del.C. § 8111.

1969, and, thus, the plaintiff could have brought an action prior to December 19, 1969, the barrier date of three years before the initiation of this suit. Therefore, unless the statute of limitations was tolled, this cause of action is also time barred.

### 4. Conversion.

■ In this count plaintiff alleges that defendants took his confidential idea, made it public, and thereby destroyed its value. The three year statute of limitations applies to this cause of action because it is an "action to recover damages caused by an injury unaccompanied with force." 10 Del.C. § 8106. The idea was disclosed to the public by an advertisement in *The Atlanta Constitution* on November 13, 1969, and, as with all torts, the plaintiff's cause of action accrued on that date. Because this "conversion" occurred more than three years before the suit was filed, the statute of limitations bars this cause of action unless the running of the limitations period was suspended.[12]

### 5. Conspiracy.

■ Plaintiff alleges that defendants conspired to obtain and to use plaintiff's idea for their own benefit without compensating him. The limitations period for civil conspiracy is three years, and the "statute of limitations in a civil conspiracy runs from the time of the overt act which is alleged to have caused the damages complained of even though damages continue to flow indefinitely as a result of such act." *Glassberg v. Boyd*, Del.Ch., 35 Del.Ch. 293, 116 A.2d 711, 717 (1955); *Henis v. Compania Agricola de Guatemala*, 116 F.Supp. 223, 226–28

(D.Del.1953), *aff'd*, 210 F.2d 950 (C.A.3, 1954); *Park-In Theatres v. Paramount-Richards Theatres*, 90 F.Supp. 727, 729 (D.Del.1950), *aff'd*, 185 F.2d 407 (C.A.3, 1951), *cert. denied*, 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373. All of the overt acts which first damaged the plaintiff—either using the idea or publishing it—happened outside the three year period before the filing of this suit, and, consequently, the civil conspiracy claim is also barred unless the statute of limitations was tolled.

■ Plaintiff contends that the period of limitations did not begin to run until he had notice of his right to sue. Plaintiff did not learn that defendants had implemented an immediate tax refund plan until January, 1971, less than two years before this suit was commenced. Furthermore, this lack of knowledge cannot be blamed on plaintiff's negligence or lack of diligence. However, in Delaware, the limitations period begins to run when the cause of action arises and ignorance of his rights does not assist the tardy plaintiff. *Mastellone v. Argo Oil Corp.*, Del.Supr., 7 Terry 102, 46 Del. 102, 82 A.2d 379, 383 (1951); *Halpern v. Barran*, Del.Ch., 313 A.2d 139, 143 (1973); *Lembert v. Gilmore, supra* at 337. Although the results of this policy may be harsh, it has systematically and remorselessly been applied by the Delaware courts. *E. g., Lewis v. Pawnee Bill's Wild West Co.*, Del.Supr., 6 Penn. 316, 22 Del. 316, 66 A. 471, 473 (1907).

■ However, the complaint does suggest that the statute of limitations may have been tolled by virtue of the doctrine of fraudulent concealment.[13]

---

12. Plaintiff also contends that defendants impliedly promised to preserve the confidentiality of his idea after its submission to them. This implied in fact contract would have been breached by publication of the newspaper advertisement on November 13, 1969, and the statute of limitations would have been triggered on that date. Accordingly, because this breach occurred more than three years before the commencement of this suit, this cause of action is time barred unless the statute of limitations was tolled.

13. Although a few Delaware cases could be read as suggesting a distinction between mere concealment and fraudulent concealment, *e. g., Mastellone v. Argo Oil Corp., supra*, 82 A.2d at 383 ("well defined exceptions . . . certain types of fraud, *or* concealment of the facts") (emphasis added), the prevailing approach requires "the defendant to have [had] actual knowledge of the wrong done and to have acted affirmatively in concealing the facts from the plaintiff." *Bradford, Inc. v. Travelers Indemnity Co., supra* at 525. See

*Lieberman v. First National Bank*, Del. Supr., 2 Penn. 416, 18 Del. 416, 8 Del.Ch. 519, 45 A. 901 (1900). It may well be that the letter from Barylick to Muchnick stating that "we [defendants] cannot participate in the arrangement you suggest"[14] constitutes a "misrepresentation which [was] intended to put the plaintiff off the trail of inquiry." *Halpern v. Barran, supra* at 143. Furthermore, if the statute of limitations is tolled because of fraudulent concealment, it does not begin to run again until the plaintiff discovered, or could have discovered by the exercise of reasonable diligence, his right to sue. *Giordano v. Czerwinski*, Del.Supr., 216 A.2d 874, 876 (1966).

"[O]nce a defendant has shown that a claim is time barred by the applicable statute of limitations, it is incumbent upon the plaintiff, if he is to avoid the bar, to come forward and demonstrate that for some equitable reason the statute should be tolled in his case." *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340 (C.A.5, 1971). Plaintiff, however, has failed to plead fraudulent concealment with the particularity demanded by Rule 9(b), F.R.Civ.P., *Dyer v. Eastern Trust & Banking Co.*, 336 F.Supp. 890, 902 (D.Me.1971); *Klein v. Lionel Corp.*, 130 F.Supp. 725, 728 (D.Del.1955). Therefore, plaintiff's pleadings are presently inadequate to raise fraudulent concealment as a means of avoiding the impact of the statute of limitations. Under these circumstances, the Court concludes that justice requires that plaintiff be granted leave to amend his complaint to plead the facts essential to establish fraudulent concealment, if plaintiff believes that the defendants' conduct warrants such allegations. Rule 15(a), F.R.Civ.P.

Consequently, the plaintiff will be granted leave to amend his complaint in order to comply with the requirements of Rule 9(b), F.R.Civ.P. If plaintiff does not amend his complaint within the time period allowed by the Court, summary judgment will be entered against plaintiff and in favor of defendants.

An order will be entered in accordance with this opinion.

*Layton v. Allen*, Del.Supr., 246 A.2d 794, 798 (1968); *Halpern v. Barran, supra* at 143; *Nardo v. Guido DeAscanis & Sons, Inc., supra* at 256.

The parties omitted from their briefs and arguments the question of whether the tolling of the statute of limitations in a diversity action is governed by state law or federal law. If there are further proceedings in this action, they may wish to address this issue and its ramifications. *Compare Sun Sales Corp. v. Block Land, Inc.*, 456 F.2d 857, 862 (C.A.3, 1972); *Atkins v. Schmutz Mfg. Co.*, 435 F.2d 527 (C.A.4, 1970), *cert. denied*, 402 U.S. 932, 91 S.Ct. 1526, 28 L.Ed.2d 867 (1971); Comment, 71 Colum.L.Rev. 865 (1971) *with Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949);

*Austrian v. Williams*, 198 F.2d 697 (C.A.2, 1952), *cert. denied*, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952); *Kahn v. Sturgil*, 66 F.R.D. 487, 491 (M.D.N.C.1975); *Saylor v. Lindsley*, 302 F.Supp. 1174, 1180, 1186 n.25 (S.D.N.Y. 1969); *Lowell Wiper Supply Co. v. Helen Shop, Inc.*, 235 F.Supp. 640, 643–44 (S.D.N.Y. 1964); Comment, 1971 Duke L.J. 785.

Also, it would appear at first glance that the doctrine of fraudulent concealment cannot save the conversion count and the implied contract theory to the extent it relies on publication of a confidential idea. Where the gravamen of the complaint is public disclosure of a private idea, the concept of concealment does seem inapposite. The Court, however, does not now resolve this issue.

14. Docket Item 20, Ex. F.