In re SHEFFIELD STEEL CORPORATION, a Delaware corporation, Waddell's Rebar Fabricators, Inc., a Missouri corporation, Wellington Industries, Inc., a Delaware corporation, Debtors and Debtors in Possession.

Sheffield Steel Corporation, Plaintiff,

v.

HMK Enterprises, Inc., Steven E. Karol, and Robert W. Ackerman, Defendants.

Bankruptcy No. 01–05508–R.

Adversary No. 03–0134–R.

United States Bankruptcy Court, N.D. Oklahoma.

Aug. 27, 2004.

Neal Tomlins, Ronald E. Goins, Tomlins & Goins, Tulsa, Oklahoma, for Plaintiff/Debtor.

Frederic Dorwart, Matthew J. Browne, Deirdre O. Dexter, Fredric Dorwart Lawyers, Tulsa, Oklahoma, J. Owen Todd, Howard M. Cooper, Todd & Weld LLP, Boston, Massachusetts, for Defendants.

### *ORDER DENYING DEFENDANTS' MOTION TO DISMISS*

DANA L. RASURE, Bankruptcy Judge.

Before the Court is the Defendants' Motion to Dismiss (First Amended Adversary Complaint) (With Request for Oral Argument)[1] (Adv.Doc. 39) filed by Defendants HMK Enterprises, Inc. ("HMK"), Steven E. Karol ("Karol") and Robert W. Ackerman ("Ackerman") (collectively the "Defendants") on January 23, 2004 (the "Motion"); Defendants' Brief in Support of Defendants' Motion to Dismiss (First Amended Adversary Complaint) (Adv.Doc. 40) filed on January 23, 2004 ("Defendants' Brief"); and Plaintiff's Brief in Response

---

1. Because matters outside the pleadings may not be considered on a motion to dismiss and the parties' arguments are well briefed, the Court concludes that oral argument is unnecessary.

to Defendants' Motion to Dismiss (Adv. Doc. 47) filed by Plaintiff Sheffield Steel Corporation ("Sheffield") on February 24, 2004 ("Sheffield's Brief").

## I. Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(B), (C), (H), and (O); Miscellaneous Order No. 128 of the United States District Court for the Northern District of Oklahoma: Order of Referral of Bankruptcy Cases effective July 10, 1984, as amended; and ¶ 13.01(f) of the Second Amended and Restated Joint Plan of Reorganization, as confirmed by the Order Confirming Second Amended and Restated Joint Plan of Reorganization of Sheffield Steel Corporation, Waddell's Rebar Fabricators, Inc. and Wellington Industries, Inc. (Doc. 734 in Sheffield's bankruptcy case, Case No. 01–05508–R).

## II. Contentions of the parties

In the Motion, Defendants move to dismiss Counts III (Improper Dividends— Directors), IV (Improper Dividends— Shareholders), and VII (Breach of Fiduciary Duty) of Sheffield's First Amended Adversary Complaint (the "Complaint") for failure to state a claim upon which relief may be granted.

In Count III of the Complaint, Sheffield alleges that Karol and Ackerman are personally jointly and severally liable under Delaware law for authorizing, as directors of Sheffield, the payment of dividends to shareholders in December 1997, January 1998 and October 1999, notwithstanding the absence of a "surplus" or "net profits" at the time of payment, rendering such payments unlawful under Delaware law. Karol and Ackerman claim that Sheffield is attempting to imply a private right of action from Section 154 of the Delaware General Corporation Law, the provision which defines "surplus," that no private right of action exists under Section 154, and that even if such an action were viable, it is barred by a three year statute of limitations. Sheffield argues that Karol and Ackerman have misinterpreted the Complaint. Sheffield states that it does not seek to derive a private right of action from Section 154, but rather that it has stated a claim under Section 174(a) of the Delaware General Corporation Law for a willful or negligent violation of Section 173 thereof, which imposes personal liability on corporate directors for a period of six years after the payment of an unlawful dividend.

In Count IV of the Complaint, Sheffield seeks to recover the allegedly unlawful dividends from the shareholder recipients—HMK, Karol and Ackerman. Again Defendants contend that no private right of action exists with respect to Section 154 and that under Delaware common law, an unlawful dividend is recoverable from its recipient only upon a showing of bad faith, an element not alleged in the Complaint. Defendants contend that this claim is also time-barred. Sheffield contends, again, that it is not attempting to imply a private right of action from Section 154, but is asserting its claim under Delaware common law. Sheffield further argues that an expansive reading of the Complaint, taken as a whole, satisfies any requirement that bad faith be imputed to the shareholders receiving the dividend because the Complaint alleges that Karol and Ackerman were grossly negligent or reckless in authorizing the dividends when no surplus existed, and that the unlawful dividends were paid to (and accepted by) themselves or in the case of HMK, a company within Karol's control. Finally, Sheffield contends that under Delaware law, the statute of limitations cannot be asserted to shield Defendants from liability arising from acts

of self-dealing or breaches of fiduciary duties.

In Count VII of the Complaint, Sheffield seeks to recover damages from Karol and Ackerman for breaching fiduciary duties imposed upon corporate directors by declaring, paying and receiving unlawful dividends. Karol and Ackerman contend that Sheffield's "information and belief" allegation that Sheffield was insolvent renders the claim defective and that the claim is barred by the statute of limitations. Sheffield argues that the Complaint contains an unequivocal allegation of insolvency and that the statute of limitations cannot be asserted to defend a corporate director's breach of fiduciary duty under Delaware law.

## III. Standard for evaluating motion to dismiss

In evaluating a motion to dismiss for failure to state a cognizable claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable to this adversary proceeding by Bankruptcy Rule 7012(b)), "it must appear beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984) (citations omitted). The Court must "assume as true the facts asserted in the complaint and construe the well-pleaded allegations in favor of the plaintiff." *Ballen v. Prudential Bache Securities, Inc.*, 23 F.3d 335, 336 (10th Cir.1994). "All reasonable inferences must be indulged in favor of the plaintiff, ... and the pleadings must be liberally construed." *Swanson*, 750 F.2d at 813 (citation omitted).

## IV. The Complaint

The relevant well-pleaded facts that the Court assumes are true for the purpose of this Motion are summarized as follows:

Sheffield is a Delaware corporation which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 7, 2001. Complaint, ¶ 5, 7. Prior to the commencement of the bankruptcy case and at all times relevant to the Complaint, Karol and Ackerman were directors of Sheffield and Karol, Ackerman and HMK were shareholders of Sheffield. *Id.*, ¶ 6, 9–11, 32, 39, and 52–58. On December 8, 1997, Karol and Ackerman, as directors, caused Sheffield to pay a dividend in the amount of $8,995,544.00 to HMK, a company controlled by Karol. *Id.*, ¶ 10, 58. On January 2, 1998, Karol and Ackerman, as directors, caused Sheffield to pay a dividend in the amount of $90,113.00 to Ackerman and a dividend in the amount of $30,096.00 to Karol. *Id.* Sheffield was insolvent at the time, or became insolvent as a result of the payment of these dividends. *Id.*, ¶ 17. Sheffield did not have a "surplus" or "net profits," as those terms are defined in Del. Code Ann. tit. 8, § 154, at the time of the payment of the dividends. *Id.*, ¶ 34–35. Sheffield's audited financial statements indicated that as of April 30, 1998, Sheffield had a negative net worth of $14,126,000.00. *Id.*, ¶ 13.

On October 15, 1999, Karol and Ackerman, as directors, caused Sheffield to pay dividends to HMK in the amount of $2,293,981.28, to Ackerman in the amount of $91,715.90, and to Karol in the amount of $6,594.13. *Id.*, ¶ 12. Sheffield was insolvent at the time, or became insolvent as a result of the payment of these dividends. *Id.*, ¶ 17. Sheffield did not have a "surplus" or "net profits," as those terms are defined in Del.Code Ann. tit. 8, § 154, at the time the dividends were paid. *Id.*, ¶ 34–35. Sheffield's audited financial statements indicated that as of April 30, 2000, Sheffield had a negative net worth of $19,213,000.00. *Id.*, ¶ 13.

Karol and Ackerman failed to insure that Sheffield satisfied all applicable requirements of Delaware law, including the requirements imposed by Delaware law relating to the financial condition of a corporation before a corporation may declare and pay a cash dividend. *Id.*, ¶ 57. In authorizing the payment of dividends to themselves and to a company controlled by Karol under the financial circumstances alleged above, Karol's and Ackerman's conduct was either wilful (*i.e.*, performed with knowledge of the statutory violation), grossly negligent or reckless. *Id.*, ¶ 53–58. It is reasonable to infer that Karol's and Ackerman's state of mind as directors of Sheffield may be imputed to establish the state of mind of Karol, Ackerman and HMK as shareholders.

## V. Conclusions of law

### A. *Count III (Improper Dividends–Directors)*

■ As stated in Sheffield's Brief, Defendants fail to appreciate the gravamen of Sheffield's claim in Count III. Although Sheffield does not identify the statutory basis for its claim in the Complaint, it clearly asserts that Karol and Ackerman are personally liable to Sheffield "under applicable Delaware law ... for the payment of any dividend plus interest that is not made in compliance with 8 Del. Stat. § 154," which is the section of the Delaware General Corporation Law that defines "surplus" and "net assets." Complaint, ¶ 36. In assessing the sufficiency of a complaint on a motion to dismiss, "[i]nstead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992).

■ Delaware statutory law imposes liability on directors for declaring and causing the corporation to pay unlawful dividends. Section 173 of the Delaware General Corporation Law states in relevant part that "[n]o corporation shall pay dividends except in accordance with this chapter." Del.Code Ann. tit. 8, § 173 ("Section 173"). Limitations on the payment of dividends is set forth in Section 170(a) of the Delaware General Corporation Law, which provides in pertinent part—

> The directors of every corporation, subject to any restrictions contained in its certificate of incorporation, may declare and pay dividends upon the shares of its capital stock, or to its members if the corporation is a nonstock corporation, either (1) **out of its surplus, as defined in and computed in accordance with §§ 154 and 244** of this title, or (2) in case there shall be no such surplus, **out of its net profits** for the fiscal year in which the dividend is declared and/or the preceding fiscal year. If the capital of the corporation, **computed in accordance with §§ 154 and 244 of this title**, shall have been diminished by depreciation in the value of its property, or by losses, or otherwise, to an amount less than the aggregate amount of the capital represented by the issued and outstanding stock of all classes having a preference upon the distribution of assets, the directors of such corporation shall not declare and pay out of such net profits any dividends upon any shares of any classes of its capital stock until the deficiency in the amount of capital represented by the issued and outstanding stock of all classes having a preference upon the distribution of assets shall have been repaired.

Del.Code Ann. tit. 8, § 170 (emphasis added) ("Section 170"). Thus, Section 170 invokes Del.Code Ann. tit. 8, § 154 ("Section

154"), the statute cited by Sheffield in its Complaint as defining the financial circumstances under which dividends may be legally paid. Section 154 defines "surplus" and "net profits" as follows—

> The excess, if any, at any given time, of the net assets of the corporation over the amount so determined to be capital shall be surplus. Net assets means the amount by which total assets exceed total liabilities. Capital and surplus are not liabilities for this purpose.

Del.Code Ann. tit. 8, § 154.

Delaware law makes directors personally liable for declaring and causing a corporation to pay dividends in the absence of "surplus" or "net assets." Section 174 of the Delaware General Corporation Law provides—

> **Liability of directors for unlawful payment of dividend or unlawful stock purchase or redemption; exoneration from liability; contribution among directors; subrogation.**
>
> (a) In case of any wilful or negligent violation of § 160 or 173 of this title, the directors under whose administration the same may happen shall be jointly and severally liable, at any time within 6 years after paying such unlawful dividend or after such unlawful stock purchase or redemption, to the corporation, and to its creditors in the event of its dissolution or insolvency, to the full amount of the dividend unlawfully paid, or to the full amount unlawfully paid for the purchase or redemption of the corporation's stock, with interest from the time such liability accrued. Any director who may have been absent when the same was done, or who may have dissented from the act or resolution by which the same was done, may be exonerated from such liability by causing his or her dissent to be entered on the books containing the minutes of the proceedings of the directors at the time the same was done, or immediately after such director has notice of the same.

Del.Code Ann. tit. 8, § 174(a) ("Section 174(a)").

■ In the Complaint, Sheffield alleges that Karol and Ackerman, as directors, declared dividends and authorized Sheffield to pay dividends to shareholders notwithstanding that Sheffield lacked a surplus or net profits from which the dividends could be legitimately paid under Section 170. Thus, Sheffield has alleged facts that would establish, if proven, a violation of Section 173, i.e., the payment of dividends contrary to the limitations contained in Section 170. The consequences for such a violation are set forth in Section 174(a)—that is, the directors who authorized the payment of unlawful dividends become personally liable to the corporation for the full amount of dividends unlawfully paid with interest thereon. It is not necessary to plead or establish that the directors *knew* the dividends were unlawful; under Section 174(a), liability flows even from negligent violations of Section 173. Sheffield alleges that Karol and Ackerman were grossly negligent or reckless, which exceeds the least culpable state of mind necessary to establish a claim under Section 174(a).

Because Sheffield's Complaint states a claim under Section 174(a), a statute that fully defines both the elements of a claim against corporate directors for authorizing the payment of unlawful dividends and the remedy available to the corporation, the Court need not address Karol and Ackerman's argument that no private right of action may be implied from the terms of Section 154. Sheffield disclaims any at-

tempt to imply a private right of action from Section 154.

■ Section 174(a) also disposes of the contention that Count III should be dismissed because it is barred by a three year statute of limitations. Section 174(a) allows a corporation to make a claim against its directors for up to six years after the date an unlawful dividend was paid. Sheffield filed its original complaint on July 10, 2003, and amended it on December 5, 2003. The Complaint states that the challenged dividends were paid on December 8, 1997, January 2, 1998, and October 15, 1999. All of these payments occurred within a period commencing six years immediately prior to the filing of the original and amended complaints.

The Court therefore concludes that Count III of the Complaint states a claim against Karol and Ackerman under Delaware law for recovery of the amount of improperly authorized dividends and that the Complaint does not establish on its face that the claim is barred by the statute of limitations. Accordingly, the Motion is denied as to Count III.

B. *Count IV (Improper Dividends— Shareholders)*

In Count IV, Sheffield seeks to recover the alleged unlawfully paid dividends from the shareholders who received them (that is, Karol, Ackerman and HMK) under Delaware common law. In seeking to dismiss Count IV, Defendants again assert that Section 154 does not create a private right of action in favor of a corporation against shareholders. As explained above, however, the Court does not interpret the Complaint to assume that a private right of action arises from Section 154. Paragraph 40 of the Complaint clearly indicates that Sheffield relies upon Delaware common law as the basis for its claim—Section 154 is cited for the purpose of defining what

constitutes surplus and net profits from which dividends may be legally paid.

Defendants also argue that Delaware law does not authorize recovery of illegal dividends from shareholders unless the shareholders are guilty of bad faith in accepting such dividends, citing *PHP Liquidating, LLC v. Robbins*, 291 B.R. 603 (D.Del.2003). The *PHP* case supports Sheffield's assertion that shareholders may be held liable to the corporation for the amount of unlawful dividends under Delaware common law and it also supports Defendants' position that shareholders may be held liable only if the shareholder had notice that such dividends were unlawful. In *PHP*, the issue was whether the certain creditors could recover from shareholders who received corporate assets through an unlawful stock redemption. Analogizing the unlawful stock redemption to the payment of unlawful dividends, the *PHP* court stated—

In [1 R. Franklin Balotti & Jesse A. Finkelstein,] *The Delaware Law of Corporations and Business Organizations,* [§ 5.32 (3d ed.2002)], the authors state that "[t]here is no statute imposing liability on stockholders who receive unlawful dividends." Similarly, there is no statute imposing liability on stockholders who receive payments for unlawful stock redemptions. Nonetheless, Section 174(c) of the [Delaware General Corporation Law] grants directors found liable for unlawful stock redemptions the right "to be subrogated to the rights of a corporation against stockholders who received ... assets for the sale or redemption of their stock with knowledge of facts indicating that such ... redemption was unlawful...." 8 *Del.C.* § 174(c)(2002). "This suggests that the shareholder will be held liable for any amount received by him but only if he had notice that the dividend

was unlawful." *The Delaware Law of Corporations and Business Organizations, supra,* § 5.32. Stated another way, shareholder liability requires bad faith. Thus, stockholders who redeem their stock in good faith are not liable to the corporation.

*Id.* at 608. Section 174(c) likewise grants directors who are liable for the declaration and payment of unlawful dividends the right "to be subrogated to the rights of the corporation against stockholders who received the dividend on … their stock with knowledge of facts indicating that such dividend … was unlawful under this chapter." Del.Code Ann. tit. 8, § 174(c). By granting directors a right of subrogation "to the rights of the corporation against' stockholders," the statute acknowledges that a corporation has the right to recover unlawful dividends from stockholders. If corporations did not have such rights, the provision granting directors subrogation would be meaningless.[2] Although it is clear that Section 174(c) allows *directors* to recover only from shareholders that had knowledge of facts indicating that the dividend was unlawful, it is not clear that the corporation's right to recover from shareholders is so limited.

Other courts have recognized a corporation's common law right to recover unlawful dividends from shareholders. *See Weinman v. Fidelity Capital Appreciation Fund (In re Integra Realty Resources,* *Inc.),* 198 B.R. 352, 365 (Bankr.D.Colo. 1996) (applying Delaware law) (corporation has a common law claim against any shareholder who knowingly received an unlawful dividend). *Cf. Stanley v. Brock (In re Kettle Fried Chicken of America, Inc.),* 513 F.2d 807, 813–14 (6th Cir.1975) (applying Delaware law) (the fact that a Delaware statute provides cause of action against *directors* for authorizing an unlawful stock repurchase or dividend does not preclude recovery directly from shareholders under a common law theory).

■■■ The Court concludes that a corporation may assert a claim under Delaware common law against a shareholder who received an unlawful dividend. It is not clear to the Court whether bad faith is an element of the claim which must be alleged, or good faith is an affirmative defense, which need not be pleaded.[3] For the purpose of this motion, the Court will assume that some element of knowledge of Sheffield's financial condition, actual or imputed, on the part of a shareholder, is required to state a claim for recovery of unlawfully paid dividends. However, it is not necessary that Sheffield use any "magic words" to plead bad faith. Under the notice pleading standard imbedded in Rule 8 of the Federal Rules of Civil Procedure, Sheffield need only make " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the

---

**2.** The Court in *PHP* dismissed claims against former shareholders who received corporate assets on account of an unlawful redemption of stock because (1) the claims were asserted by individual *creditors* of the corporation rather than by the corporation itself or its successor or trustee and (2) the shareholders redeemed their shares through brokers and there was no allegation that the shareholders were aware that *PHP's* capital was impaired, and therefore the court concluded that the shareholders redeemed their shares in good faith. *PHP,* 291 B.R. at 608–09. Apparently,

the fact that the shareholders acted in good faith was evident from the face of the complaint.

**3.** The author of Fletcher Cyclopedia of the Law of Private Corporations assumes that good faith is an affirmative defense that must be raised by a defendant shareholder in an action to recover unlawful dividends. WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS §§ 5422–23 (rev.2004).

grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the facts and issues.... The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citation omitted). Rule 9 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7009, does not require that allegations of knowledge, intent or other conditions of the mind be supported by particular facts at the pleading stage— instead, "condition[s] of the mind of a person may be averred generally." Fed. R.Civ.P. 9(b).

■ A liberal reading of the Complaint, taken as a whole and in the light most favorable to Sheffield, allows the Court to reasonably infer that Karol, Ackerman and HMK knew or should have known that the negative financial position, as alleged by Sheffield, precluded the lawful payment of dividends. As a general rule, "directors and officers of a corporation are presumed to know the financial condition of the corporation, and if they accept unlawful dividends as shareholders, the dividends may be recovered by the corporation." WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5426 (rev.2004). The Complaint alleges

that Karol and Ackerman, as directors, were grossly negligent or reckless in authorizing the dividends when no surplus or net profits existed, and that unlawful dividends were paid to (and accepted by) themselves or in the case of HMK, a company within Karol's "control." Complaint, ¶ 54, 58. The Court can reasonably infer that as directors with duties to exercise due care and to be well informed, Karol and Ackerman knew or should have known of Sheffield's negative financial condition before declaring dividends and that such knowledge could be imputed to themselves and HMK as shareholders receiving the dividends.[4] The Court therefore concludes that the Complaint states a claim under Delaware common law against Defendants as shareholders for recovery of unlawfully paid dividends.

Finally, Defendants assert that with respect to the dividends paid in 1997 and 1998, Sheffield's claim for recovery of such dividends from shareholders is barred by a three year statute of limitations, citing Del. Code Ann. tit. 10, § 8106. Section 8106 states—

No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and *no action to recover damages caused by an injury unaccompanied*

---

4. The Complaint does not articulate the means by which Karol had "control" over HMK, but taking the Complaint in the light most favorable to Sheffield, the Court assumes that Karol directed the corporate conduct of HMK, either as a controlling shareholder or director. In any event, for the purposes of this motion to dismiss, the Court imputes Karol's knowledge to HMK by virtue of his alleged "control" of HMK.

*with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action;* subject, however, to the provisions of §§ 8108–8110, 8119 and 8127 of this title. Del.Code Ann. tit. 10, § 8106 ("Section 8106") (emphasis added). Defendants contend that Delaware courts consider the nature of the claim being asserted and the nature of the remedy sought in determining whether Section 8106 applies to any particular claim and that courts have imposed a three year limitation on actions seeking damages in shareholder derivative actions, on claims for accounting which seek the recovery of money, and on common law claims of mismanagement and breach of fiduciary duty. Defendants' Brief at 11–12. For the purposes of this motion, the Court will assume that Section 8106 supplies the time limitation in which a corporation may file suit to recover an unlawful dividend from a shareholder. *See, e.g., Kahn v. Seaboard Corp.,* 625 A.2d 269, 271, 277 (Del.Ch.1993) (Section 8106 is applicable to claim against a fiduciary for wrongful self-dealing).

Relying on *Bovay v. H.M. Byllesby & Co.,* 38 A.2d 808 (Del.1944) and its progeny, Sheffield contends that Delaware law provides for equitable tolling of the statute of limitations in cases where defendants are alleged to have breached fiduciary duties by engaging in self-dealing and self-enrichment, and therefore factual issues preclude dismissal as a matter of law on statute of limitations grounds in such cases. Sheffield's position is well supported.

██ A comprehensive and persuasive analysis of the current state of Delaware law on equitable tolling in such circumstances is set forth in *Niehoff v. Maynard,* 299 F.3d 41 (1st Cir.2002) (applying Delaware law). In *Niehoff,* the court found that claims for breach of fiduciary duty were governed by Section 8106 and that generally, "[a]bsent concealment or fraud, a cause of action accrues at the moment of the wrongful act, even if the plaintiffs are ignorant of the wrong." *Id.* at 48. The court found that the facts of the case would have barred plaintiffs from recovering due to the lapse of the statute of limitations unless tolling the statute was appropriate. *See id.* Defendant Maynard was a fiduciary—this fact "not only ha[d] consequences regarding the substantive duty owed to the plaintiffs, but also ha[d] ramifications for the tolling analysis." *Id.* The *Niehoff* court began its review by turning to *Bovay, supra,* the Delaware case seminal in the development of equitable tolling of claims against corporate actors who engage in self-dealing. In *Bovay,* the Delaware Supreme Court stated—

> Sound public policy requires the acts of corporate officers and directors in dealing with the corporation to be viewed with a reasonable strictness. Where suit is brought in equity to compel them to account for loss or damage resulting to the corporation through passive neglect of duty, without more, the argument that they ought not to be deprived of the benefit of the statute of limitations is not without weight; but where they are required to answer for wrongful acts of commission by which they have enriched themselves to the injury of the corporation, a court of conscience will not regard such acts as mere torts, but as serious breaches of trust, and will point the moral and make clear the principle that corporate officers and directors, while not in strictness trustees, will, in such case, be treated as though they were in fact trustees of an express and subsisting trust, and without the protection of the statute of limitations,

especially where insolvency of the corporation is the result of their wrongdoing. *Niehoff*, 299 F.3d at 48, *quoting Bovay*, 38 A.2d at 820. Since *Bovay*, the stark principle that self-dealing corporate actors may never invoke the passage of time as a defense to claims has been limited and refined by Delaware courts. In *Halpern v. Barran*, 313 A.2d 139 (Del.Ch.1973), the court summarized the status of equitable tolling as follows—

> The statute of limitations applies to derivative actions which seek recovery of damages or other essentially legal relief; however, in extraordinary cases which involve, as a minimum, allegations of fraudulent self-dealing, the benefit of the statute will be denied to those corporate officers and directors who profited personally from their misconduct.

*Id.* at 142 (quoted in *Niehoff*, 299 F.3d at 49). In addition to profiting from improper self-dealing, a corporate actor's statute of limitations defense may be also equitably tolled during the time the actor fraudulently concealed such wrongdoing. "Specifically, '[w]here there has been fraudulent concealment from a plaintiff, the statute is suspended only until his rights are discovered or until they could have been discovered by the exercise of reasonable diligence.'" *Niehoff*, 299 F.3d at 49, *quoting Halpern*, 313 A.2d at 143.

█ In *Kahn v. Seaboard Corp.*, 625 A.2d 269 (Del.Ch.1993), the court confirmed that self-dealing and fraudulent concealment are separate and independent grounds for the equitable tolling of the statute of limitations. In *Kahn*, the court found that stockholder plaintiffs had a right to rely on the good faith of the defendant directors with respect to managing the corporation's property.

> Since trust and good faith are the essence of this relationship, it would be corrosive and contradictory for the law to punish reasonable reliance on that good faith by applying the statute of limitations woodenly or automatically to alleged self-interested violations of trust. It does not, in my opinion, do so. Reasonable reliance upon the competence and good faith of others who have assumed legal responsibilities towards a plaintiff have not infrequently been held sufficient to toll the running of an applicable statute of limitations.

*Id.* at 275. Based upon this line of cases, the *Niehoff* court held that—

> Delaware courts have specified two specific sets of circumstances that can trigger equitable tolling. In the first, a fiduciary is charged with unfair self-dealing; in the second, a defendant fraudulently conceals facts that are essential to the plaintiff's cause of action.

*Niehoff*, 299 F.3d at 50 (citation omitted). "[A] limitations period may be tolled absent allegations of affirmative acts of concealment by the defendants, where the parties to the litigation stand in a fiduciary relationship to each other and where the plaintiff alleges self-dealing." *Niehoff*, 299 F.3d at 51, *quoting Litman v. Prudential–Bache Properties, Inc.*, 1994 WL 30529 at *3 (Del.Ch. Jan. 14, 1994).

█ In cases where allegations in a plaintiff's complaint establish potential grounds for equitable tolling, a court must balance the equities to determine whether tolling is appropriate. *Niehoff*, 299 F.3d at 51. In cases of alleged self-dealing, "[p]laintiffs can benefit from tolling until such point as other equitable considerations (in the nature of laches) preclude them from recovering. Such considerations include whether the plaintiff failed to act promptly upon learning of the fiduciary's wrongdoing and/or whether the plaintiff's failure to discover the wrongdoing was unreasonable." *Id.* Further—

[A] plaintiff who is duped by a fiduciary is given far more leeway than a plaintiff who is victimized by someone in an arm's length transaction. If the plaintiff can demonstrate that the defendant was a fiduciary who engaged in wrongful self-dealing, the test for equitable tolling is satisfied. The decision to toll the running of the limitations period, as well as the decision over how much tolling is equitable in any particular case, is committed, within wide limits, to the discretion of the trial judge.

*Id.* at 52.

■■■■ Thus, where a complaint satisfies the elements of a *prima facie* case for equitably tolling—*i.e.*, it contains allegations of self-dealing for profit by a fiduciary—it is ordinarily inappropriate to summarily dismiss a claim as untimely under an otherwise applicable statute of limitations pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Laventhol, Krekstein, Horwath & Horwath v. Tuckman,* 372 A.2d 168, 170 (Del. 1976) (allegations in complaint that directors engaged in fraudulent self-dealing satisfied the minimum requirements of equitable tolling to preclude dismissal on statute of limitations grounds). In such cases, the resolution of a defendant's statute of limitations defense and the plaintiff's counter-defense of equitable tolling requires factual development and a full presentation of evidence relevant to the equities that must be assessed and balanced. Under the liberal rules of notice pleading, a plaintiff is not required to state all the evidence it would present in support of its equitable tolling claim in the complaint.

■■■■ In this case, Sheffield alleges that Karol and Ackerman were directors of Sheffield, from which the Court may legally conclude that they owed fiduciary duties toward Sheffield. *See Malone v. Brincat,* 722 A.2d 5, 10 (Del.1998).[5] Sheffield also alleges the fiduciaries engaged in unlawful self-dealing in both declaring and *accepting* illegal dividends, which under certain circumstances constitute breaches of the duties of loyalty and due care. Thus the Complaint states facts sufficient to advance an equitable tolling argument that could, depending upon the evidence and the equities, defeat Karol and Ackerman's statute of limitations defense. Accordingly, as to Karol and Ackernman, Count IV withstands a motion to dismiss.[6]

■■■■ Whether HMK's statute of limitations defense is subject to equitable tolling is a harder question. HMK occupied the position of shareholder, but was not a director and thus was not a fiduciary,

---

**5.** The directors of Delaware corporations stand in a fiduciary relationship not only to the stockholders but also to the corporations upon whose boards they serve. The director's fiduciary duty to both the corporation and its shareholders has been characterized by this Court as a triad: due care, good faith, and loyalty. That triparte fiduciary duty does not operate intermittently but is the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided.

*Malone,* 722 A.2d at 10 (footnotes omitted).

**6.** The court in *Kahn v. Seaboard Corp.,* 625 A.2d 269 (Del.Ch.1993), dismissed a plaintiff's claim with leave to amend to plead more facts to establish the right to invoke equitable tolling. This Court believes, however, that dismissal is not appropriate since equitable tolling depends upon a balancing of the equities, requiring Sheffield to anticipate at the complaint stage matters Defendants may or may not assert in their favor in order to allege facts to negate or counterbalance such matters, a process inconsistent with notice pleading and more appropriate for trial. The Court concludes that the Complaint, as it currently stands, does not establish *on its face* that Count IV is barred by the statute of limitations.

nor did it engage in self-dealing by declaring a dividend payable to itself. Delaware law recognizes that a non-fiduciary may be jointly and severally liable for a fiduciary's breach of duty (such as unjustifiable self-dealing) if the non-fiduciary participated in or aided and abetted the breach. *See Laventhol, Krekstein, Horwath & Horwath v. Tuckman,* 372 A.2d 168, 170 (Del.1976); *Jackson Nat'l Life Ins. Co. v. Kennedy,* 741 A.2d 377, 386 (Del.Ch.1999); *NL Industries, Inc. v. MAXXAM, Inc.,* 1997 WL 187317 at *12 (Del.Ch. April 4, 1997) ("equitable tolling doctrine applies to claims against a disinterested party who conspires with a self-dealing fiduciary to defraud the beneficiary").

To state a claim against a non-fiduciary third party for aiding and abetting a breach of fiduciary duty, the following elements must be alleged: (1) the existence of a relationship between the plaintiff and a fiduciary, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the non-fiduciary third party, and (4) damages to the plaintiff resulting from the concerted action of the fiduciary and non-fiduciary. *See In re eBay, Inc. Shareholders Litigation,* 2004 WL 253521 at *5 (Del.Ch. Feb. 11, 2004); *Jackson Nat'l Life,* 741 A.2d at 386; *Nufarm v. RAM Research,* 1998 WL 668648 at *4 (Del.Ch. Sept. 15, 1998); *Gilbert v. El Paso Co.,* 490 A.2d 1050, 1057 (Del.Ch. 1984). A shareholder that accepts payment of a dividend with knowledge that payment of such dividend was unlawful has participated in the director's breach. According to *Laventhol,* non-fiduciaries who "knowingly join a fiduciary in an enterprise which constitutes a breach of his

fiduciary duty of trust are jointly and severally liable for any injury which results." *Laventhol,* 372 A.2d at 170 (citation omitted). Because, in such a case, the fiduciaries and non-fiduciaries "stand in the same position under the principles of law governing the merits of the complaint, . . . there is, therefore, no reason why the principles of law governing applicability of the statute of limitations [including equitable tolling] should not apply in like manner." *Id.* at 170–71.

Sheffield has pleaded that (1) Karol was a director of Sheffield with fiduciary duties (Complaint, ¶ 52, 53); (2) Karol breached his fiduciary duties by authorizing and declaring improper dividends and causing them to be paid to HMK (Complaint at ¶¶ 41, 58); (3) that Karol "controlled" HMK (Complaint, ¶ 58); and (4) Sheffield was damaged to the extent of the unlawful dividend (Complaint, ¶¶ 41, 42). Again, the Court will indulge Sheffield, as it must, in assuming that under Karol's control, HMK inherited Karol's knowledge, actual or constructive, of the illegality of the dividend. The Complaint, construed liberally, alleges all the elements for imposing liability for breaching a particular fiduciary duty (knowingly accepting payment of an illegal dividend) to a non-fiduciary under Delaware law. Accordingly, pursuant to *Laventhol,* at this stage, Sheffield is entitled to assert an equitable tolling defense to HMK's statute of limitations defense, and dismissal is premature.[7]

C. *Count VII (Breach of Fiduciary Duty)*

In Count VII, Sheffield alleges that as directors, Karol and Ackerman owed to

---

7. The Court notes that in its Complaint, Sheffield has not asserted a separate affirmative claim against HMK for aiding and abetting Karol and Ackerman's alleged breaches of fiduciary duty and does not seek damages from HMK under that theory. At this point, the Court only concludes that the Complaint

alleges facts sufficient to support Sheffield's argument that because of HMK's close association with Karol, HMK's statute of limitations defense against Sheffield's claim for recovery of unlawful dividends may be subject to equitable tolling and therefore should not be summarily dismissed.

Sheffield duties of loyalty, honesty and care in conducting the affairs of Sheffield (Complaint, ¶ 52), that Karol and Ackerman had an obligation to discharge these fiduciary duties in good faith and with the diligence, care and skill that an ordinary prudent person would exercise in the same or similar circumstances (Complaint, ¶ 53), that Karol and Ackerman were grossly negligent or reckless in authorizing dividend payments to themselves and HMK when Sheffield did not have adequate surplus or net profits (Complaint, ¶ 54–55), and therefore Karol and Ackerman violated their fiduciary duties toward Sheffield (Complaint, ¶ 54).

Also in support of its breach of fiduciary duty claim, Sheffield alleges "upon information and belief" that Sheffield was insolvent at the time the dividends were declared and paid, or that Sheffield became insolvent as a result of the payment of the dividends and that paying dividends while insolvent was grossly negligent or reckless behavior by Karol and Ackerman (Complaint, ¶ 56). Sheffield further alleges that failing to insure that Sheffield complied with Delaware law in paying dividends was a breach of Karol and Ackerman's fiduciary duties (Complaint, ¶ 57). Finally, Sheffield alleges that Karol and Ackerman's payment of unlawful dividends to themselves and to HMK breached their duties of good faith, loyalty and due care (Complaint, ¶ 58). Sheffield seeks to recover the full amount of the allegedly unlawfully declared dividends—$12,500,000—plus interest from each of Karol and Ackerman for violating duties a director owes to a corporation (Complaint, ¶ 59).

Karol and Ackerman seek to dismiss Count VII on two grounds: (1) that the claim is barred by the three year statute of limitations imposed by Section 8106, and (2) that allegations of insolvency made "upon information and belief" are not sufficient to state an actionable claim. Defendants' Brief at 14–15. Because the Court has already concluded that the Complaint states facts sufficient to advance Sheffield's argument that claims against Karol and Ackerman as fiduciaries may be subject to equitable tolling, which could, depending upon the evidence and the equities, defeat Karol and Ackerman's statute of limitations defense, dismissal of Count VII on statute of limitations grounds is not appropriate for the same reasons, set forth above, that Count IV will not be dismissed.

With respect to Karol and Ackerman's argument that allegations made "upon information and belief" are inadequate to state facts in support of a necessary element of a claim, the Court need not decide whether Sheffield's "information and belief" allegation of insolvency dooms Count VII because with or without the allegation of insolvency,[8] Sheffield has stated a claim for breach of fiduciary duty. Sheffield alleges that Karol and Ackerman were directors of Sheffield, from which the Court may legally conclude that they owed fiduciary duties toward Sheffield, including the duties of good faith, loyalty and due care. *See Malone v. Brincat*, 722 A.2d 5, 10 (Del.1998). Sheffield alleges that these fiduciaries engaged in unlawful self-dealing by paying dividends to themselves and their affiliates when Sheffield did not have a surplus or net profits (as those terms are defined by Delaware law) and therefore such payments were made outside the parameters of permissible dividends under Delaware law. The concept of "insolvency" is not relevant to the issue of the legitimacy of authorizing dividends—the

---

8. In any event, the Court notes, as Sheffield points out, that paragraph 17 of the Complaint alleges *without reservation* that Sheffield was insolvent at the time the alleged unlawful dividends were paid.

relevant inquiry is whether the corporation had a "surplus" or "net profits."

The Court recognizes that under the business judgment rule directors of a Delaware corporation are entitled to a presumption that their actions were made in good faith and with due care. *See McMullin v. Beran,* 765 A.2d 910, 916 (Del.2000) (the business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company," *quoting Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984)). Allegations of self-dealing disrupt the usual presumption that directors have acted with reasonable business judgment however; only disinterested directors may benefit from the presumption of good faith and due care bestowed by the business judgment rule. *See Gottlieb v. Heyden Chemical Corp.,* 90 A.2d 660, 663 (Del.1952) (where self-dealing is alleged, the burden shifts to directors to prove "not only that the transaction was in good faith, but also that its intrinsic fairness will withstand the most searching and objective analysis."); *Strougo v. Scudder, Stevens & Clark, Inc.,* 964 F.Supp. 783, 802 (S.D.N.Y.1997) ("a proper allegation that a director has an interest in an action creates a *prima facie* case that the director did not act in good faith"). Thus, a complaint alleging that directors transacted business on behalf of the corporation that resulted in their personal enrichment is sufficient to state a cause of action for breach of such interested directors' duties of good faith and loyalty, and it is incumbent upon the directors to prove that the transaction was fair to the corporation.

In addition to allegations of self-dealing, Sheffield alleges that Karol and Ackerman acted in a grossly negligent or reckless manner in causing the unlawful payment of dividends. As a component of its duty of care, a director must exercise "informed business judgment" in entering into transactions on behalf of a corporation. *See McMullin v. Beran,* 765 A.2d 910, 921 (Del.2000).

> [T]o invoke the [business judgment] rule's protection directors have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them. Having become so informed, they must then act with requisite care in the discharge of their duties. While the Delaware cases use a variety of terms to describe the applicable standard of care, our analysis satisfies us that under the business judgment rule director liability is predicated upon concepts of gross negligence.

*Aronson,* 473 A.2d at 812, *overruled on other grounds.* Sheffield's claim that Karol and Ackerman acted with gross negligence or recklessness in failing to inform themselves of Sheffield's financial condition (or by declaring dividends in spite of Sheffield's financial condition), and that such negligence or recklessness resulted in the payment of unlawful dividends, is sufficient to state a claim that Karol and Ackerman violated their duties as directors to exercise due care in acting on behalf of Sheffield.

The Court therefore concludes that Court VII of the Complaint states a claim for various breaches of fiduciary duties and withstands Defendants' motion to dismiss.

## VI. Conclusion

For the reasons stated above, the Motion is denied.