**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| STOLTZ MANAGEMENT OF DELAWARE, INC., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) <br> ) C.A. No. N25C-02-367 MAA |
| v. | ) <br> ) |
| ENTRATA, INC., | ) <br> ) |
| Defendant. | ) <br> ) |

Submitted: November 11, 2025
Decided: January 30, 2026

*Upon Defendant Entrata, Inc.'s Motion to Dismiss:*
**GRANTED in part, DENIED in part.**

## ORDER[1]

1.      Plaintiff Stoltz Management of Delaware, Inc. ("Stoltz") is a Delaware corporation operating three residential apartment complexes in North Carolina.[2] Defendant Entrata, Inc. ("Entrata") is a Delaware corporation offering property management software services to apartment managers.[3]

2.      On or around April 12, 2021, the Parties entered into a "Software License and Maintenance Agreement" contemporaneously with an "Entratamation

---

[1] The Court assumes familiarity with the facts and only recites those necessary to resolving the motion at issue.

[2] D.I. 14 ["Am. Compl."] ¶¶ 7, 14.  These complexes are called the Arboretum, Lofts at Weston ("Lofts"), and Weston Lakeside ("Lakeside") (collectively the "Properties").  *Id.* ¶ 14.

[3] *Id.* ¶¶ 8, 15.

1

Beta Test Addendum" (collectively, the "Agreement").[4] The Agreement included deploying Entratamation—Entrata's new smart home system and application—at the Properties.[5] Each apartment unit was to be equipped with an Entrata hub ("Hub") and a corresponding smart thermostat, door lock, and water leak sensor.[6]

3.    After discovering the apartment complexes at the Properties were existing structures, not new construction, Entrata informed Stoltz that the Hubs required a dedicated property-wide internet network.[7] Entrata suggested Stoltz establish a property-wide network by re-wiring the apartment complexes at each Property.[8] On April 29, 2021, Entrata—through employee Makade Norton ("Norton")—proposed delaying Hub installation so re-wiring could take place.[9]

4.    On June 7, 2022, Norton emailed Stoltz employees that "[Best Buy was] almost done configuring the networks" at the Properties but Entrata was "currently limited on the number of Entrata Hubs."[10] Norton noted Entrata "could install all the hardware/hubs [at two of three Properties] . . . by the end of July but with [the effects of COVID-19] we can't make any guarantees."[11]

---

[4] *Id.* ¶ 1.
[5] *Id.* ¶¶ 15-18.
[6] *Id.* ¶ 18. Stoltz was to purchase the corresponding equipment at Best Buy. *Id.*; ¶ 21.
[7] *Id.* ¶ 19.
[8] *Id.* ¶ 19. Each re-wiring would be done with additional Ethernet cabling and ports. *Id.*
[9] Opening Br. Ex. D ["Norton Schedule Choices Email"] at 1-2.
[10] Am. Compl. ¶ 28; Opening Br. Ex. E ["Norton Update Emails"] at 3.
[11] Norton Update Email at 3.

5.    In February 2023, Entrata delivered the first Hubs to Lofts.[12]  Many Hubs were defective and caused widespread issues.[13]  Those Hubs would go offline in August 2023 and never regain connectivity.[14]  More Hubs were then delivered to Lakeside, but Stoltz declined to install them after the problems at Lofts.[15]  Stoltz notified Entrata several times of defective Hub issues, but according to Stoltz, a sufficient resolution never occurred.[16]

6.    Stoltz officially terminated the Agreement with Entrata in January 2024.[17]  Stoltz also demanded a refund on Implementation Charges and Access Fees.[18]  Entrata personnel indicated in late 2023 that a refund may be possible.[19]  In early 2024, however, Entrata discontinued Entratamation and adopted a new policy of refusing refunds.[20]  On February 1, 2024, Entrata's Regional Vice President—

---

[12] Am. Compl. ¶ 31.

[13] *Id.* ¶¶ 32-33 ("Residents and apartment managers reported widespread issues…including safety and security defects…") including Hubs being offline, unable to connect to other devices, failing to properly sync to thermostats or door locks, and adjusting the set temperature in apartments to uncomfortable levels.  *Id.* ¶ 33.

[14] *Id.* ¶ 34.

[15] *Id.* ¶ 35.

[16] *Id.* ¶ 38 ("Stoltz gave Entrata written notice of defects with the Hubs on numerous occasions between March 2023 and March 2024, either through emails or through help tickets submitted through Entrata's platform.  Entrata never sufficiently corrected the issues with the Hubs or the Application.").

[17] *Id.* ¶ 39.

[18] *Id.*  In 2021, Stoltz paid Entrata $233,872 in set-up and installation fees ("Implementation Charges").  *Id.* ¶ 25.  Starting in March 2023, Entrata charged Stoltz $37,923.36 in access fees ("Access Fees").  *Id.* ¶ 36.

[19] *Id.* ¶¶ 41-42.

[20] *Id.* ¶ 43.

Katie Erinn Bernstein—communicated to Stoltz that Entrata was "not prepared to offer eating the cost for hardware."[21]

7. On October 2, 2024, Stoltz filed an action against Entrata in North Carolina Superior Court.[22] The Parties agreed to mediation to avoid further litigation.[23] The Parties also agreed that if mediation was unsuccessful, Stoltz would file the case in Delaware (in accordance with the Agreement's forum selection clause).[24] Mediation took place on January 13, 2025, but was unsuccessful.[25] Stoltz voluntarily dismissed the North Carolina case on February 14, 2025, the day after Stoltz filed this action in Delaware.[26]

8. Stoltz sued Entrata in Delaware on February 13, 2025,[27] and amended its complaint on May 21, 2025 ("the Amended Complaint).[28] The Amended Complaint contains five counts: breach of contract;[29] unjust enrichment;[30] fraud;[31]

---

[21] *Id*. ¶ 44; Opening Br. Ex. F. ["Bernstein Email"].

[22] Am. Compl. ¶ 47. Stolz did not provide the Court with a copy of the complaint it filed in North Carolina Superior Court (the "North Carolina complaint") and did not incorporate the North Carolina complaint by reference in this action.

[23] *Id*. ¶ 51.

[24] *Id*. The Agreement has a venue provision requiring litigation to occur in Delaware. *Id*. ¶ 50. In North Carolina, however, such provisions are "void and against public policy." *Id*. ¶ 48. [Should we say here that we don't need to worry about this b/c Delaware procedural rules apply now that we are in Delaware, or something like that?]

[25] *Id*. ¶ 51.

[26] *Id*. ¶ 52.

[27] *See generally* D.I. 1 ["Compl."] (outlining the original complaint filed in the Superior Court of Delaware (the "Complaint")).

[28] *See generally* Am. Compl. (outlining changes made to the original complaint).

[29] Am. Compl. ¶¶ 53-65.

[30] *Id*. ¶¶ 66-71.

[31] *Id*. ¶¶ 72-94.

violation of North Carolina's Unfair and Deceptive Trade Practices Act;[32] and violation of Delaware's Uniform Deceptive Trade Practices Act.[33]

9. On June 20, 2025, Entrata filed its Motion to Dismiss (the "Motion"), seeking dismissal of all five counts.[34] On July 28, 2025, Stoltz filed its opposition to the Motion.[35] On August 20, 2025, Entrata filed its reply in support of its Motion.[36] On October 7, 2025, the Court heard oral argument on the Motion and took the Motion under advisement.

## ANALYSIS

## I. Legal Standard

10. Entrata moves to dismiss the Amended Complaint pursuant to Superior Court Rules of Civil Procedure 9(b) and 12(b)(6). The "pleadings standards governing the motion to dismiss stage . . . are minimal."[37] The court must "accept all well-pleaded factual allegations in the complaint as true."[38] The court must also

---

[32] *Id*. ¶¶ 95-109.
[33] *Id*. ¶¶ 110-115.
[34] *See generally* Opening Br. (presenting Entrata's arguments for dismissing all five Stoltz counts).
[35] *See generally* D.I. 22 ["Answering Br."] (presenting Stoltz's opposition to Entrata's Motion).
[36] *See generally* D.I. 23 ["Reply Br.] (presenting Entrata's reply to Stoltz's opposition).
[37] *Swan Energy, Inc. v. Inv. Prot. Unit Del. Dept. of Just.*, 2025 WL 1744503, at *2 (Del. Super. June 24, 2025) (citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011)).
[38] *Id*.

"read the complaint generously" and construe all such allegations "in a light most favorable to the plaintiff."[39]

11. The court "credits even vague allegations, so long as they provide the opposing party notice of the claim; gives the non-movant the benefit of all reasonable factual inferences; and denies the motion if recovery on the claim is reasonably conceivable."[40] Dismissal is appropriate only where a complaint is so deficient that the plaintiff "could not recover under any reasonably conceivable set of circumstances susceptible of proof."[41]

12. In Delaware, the "pleading standard [for fraud] is heightened[.]"[42] Superior Court Civil Rule 9(b) requires that fraud claims "be stated with particularity."[43] Rule 9(b)'s particularity requirement "serves to "(1) provide defendants with enough notice to prepare a defense; (2) prevent plaintiffs from using complaints as fishing expeditions to unearth wrongs to which they had no prior knowledge; and (3) preserve a defendant's reputation and goodwill against baseless claims."[44]

---

[39] *Id.* (citing *Henry v. Middletown Farmers Mkt., LLC*, 2014 WL 4426311, at *2 (Del. Super. Sept. 8, 2014)).
[40] *Id.* (citing *Agahi v. Kelly*, 2024 WL 1134048, at *7 (Del. Super. Mar. 15, 2024)).
[41] *Id.* (citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011)).
[42] *KnighTek, LLC v. Jive Commc'ns, Inc.*, 225 A.3d 343, 351 (Del. 2020) (citing *Nutt v. A.C. & S., Inc.*, 466 A.2d 18, 23 (Del. Super. 1983)).
[43] Super. Ct. Civ. R. 9(b).
[44] *Murray v. Mason*, 2021 WL 2742595, at *2 (Del. Super. June 30, 2021) (quoting *In re Benzene Litig.*, 2007 WL 625054, at *6 (Del. Super. Feb. 26, 2007)).

6

13. "The factual circumstances that must be stated with particularity refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation."[45] "Malice, intent, knowledge and other condition[s]" of a person's mind may be averred generally.[46]

## II. Entrata's Motion to Dismiss is GRANTED in part and DENIED in part.

### A. Stoltz's breach-of-contract count is DISMISSED.

14. Stoltz's breach-of-contract claims concern Entrata's alleged failures to fulfill obligations under the Agreement – the contract governing this dispute.[47] Stoltz alleges Entrata breached the Agreement in several ways.[48]

15. Stoltz first argues Entrata was obligated to deliver functional Hubs "within a reasonable time," but delivered nonfunctional Hubs two years later.[49] Stoltz next argues Entrata was obligated to either replace defective Hubs or provide credit for fees incurred during the time Hubs were defective, neither of which occurred.[50] Finally, Stoltz argues Entrata refused to "eat the costs" for undelivered

---

[45] *Valley Joist BD Hldgs., LLC v. EBSCO Indus., Inc.*, 269 A.3d 984, 988 (Del. 2021) (citing *Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 144 (Del. Ch. 2004).

[46] Del. Super. Ct. Civ. R. 9(b).

[47] Am. Compl. ¶¶ 53-65.

[48] *Id.*

[49] *Id.* ¶¶ 54-55.

[50] *Id.* ¶¶ 56-61.

Hubs despite the Agreement providing that "[i]n no event shall [Stoltz] be obligated to purchase such Hubs" upon Agreement termination.[51]

16.    Entrata argues Stoltz's breach-of-contract claims should be dismissed for two reasons.[52] Entrata first contends Stoltz's Amended Complaint fails to state a claim for breach of contract.[53] Entrata asserts Stoltz's breach-of-contract theories fail because they contradict the plain terms of the governing documents and do not plead necessary elements for a breach-of contract claim.[54] Entrata then contends, even if a breach-of-contract claim was pled, it is time-barred by the Agreement.[55]

       i.    *Stoltz's breach-of-contract claims are time-barred by the Agreement.*

17.    Delaware courts apply a three-step analysis to determine whether a claim is time-barred.[56] First, courts determine when the cause of action accrues.[57] Second, courts determine whether the statute of limitations may be tolled.[58] The plaintiff must plead with specificity why the statute of limitations should be tolled.[59] Third, if a tolling exception applies, courts determine when the plaintiff received

---

[51] *Id.* ¶ 62.
[52] Opening Br. at 3-17.
[53] *Id.* at 13-17, 22-28.
[54] *Id.* at 23.
[55] *Id.* at 13-17.
[56] *Wind Point P'rs VII-A, L.P. v. Insight Equity A.P. X Co.*, 2020 WL 5054791, at *6 (Del. Super. Aug. 17, 2020) (citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del. 2004)).
[57] *Walton*, 2024 WL 3064942, at *3 (Del. Super. July 18, 2024) (quoting 10 *Del. C.* § 8106)).
[58] *Wind Point,* 2020 WL 5054791, at *6 (Del. Super. Aug. 17, 2020) (citing *Wal-Mart*, 860 A.2d 312 (Del. 2004)).
[59] *Wind Point,* 2020 WL 5054791, at *6 (Del. Super. Aug. 17, 2020) (citing *Young & McPherson Funeral Home, Inc. v. Butler's Home Improvement, LLC*, 2015 WL 4656486, at *1 (Del. Super. Aug. 6, 2015)).

inquiry notice.[60] The statute of limitations begins to run from the date when the plaintiff received inquiry notice.[61]

18. Under the Agreement, "[a]ll claims must be brought within twelve (12) months following the date that such claim arose."[62] While the Parties dispute the types of claims contemplated by this provision, there is no dispute that contractual claims are subject to this time-bar.[63]

19. During oral argument, Stoltz argued that its "position is that [all] our contract claims accrued in February of 2024."[64] This position is nonsensical. Stoltz terminated the Agreement in January of 2024, eliminating any obligation Entrata had to deliver Hubs "within a reasonable time" or to replace defective Hubs beyond this termination date.[65]

20. Given the plaintiff-friendly phase of the proceedings, however, the Court resolves the pleading stage inferences in Stoltz's favor. During oral argument, when pressed to provide a specific date in which this contract claim accrued, Stoltz pointed to an email dated February 1, 2024.[66] The only contract claim that could

---

[60] *Wind Point*, 2020 WL 5054791, at *6 (Del. Super. Aug. 17, 2020) (citing *Wal-Mart*, 860 A.2d 312 (Del. 2004)).

[61] *Id*.

[62] Opening Br. Ex. B. ["Beta Test Addendum"] § 15(b).

[63] The Parties disagree that tort claims are subject to Beta Test Addendum § 15(b). Opening Br. at 13-17; Answering Br. at 9-11. The Parties agree, however, that Beta Test Addendum § 15(b) applies to contractual claims. Opening Br. at 13-17; Answering Br. at 9; Tr. 45:9-12.

[64] Tr. 45:21-46:1.

[65] Am. Compl. ¶ 39.

[66] Tr. 84:3-20; Bernstein Email.

arise in February 2024 is Entrata's refusal in this email "to give Stoltz any credits from pre-paid fees incurred when the Hubs had not worked."[67]

21. The Court is skeptical that this email is incorporated by reference in the Amended Complaint, as Stoltz only states, in conclusory fashion, that Stoltz gave Entrata written notice of defects with the Hubs "through emails" between March 2023 and March 2024.[68] Nonetheless, reading the Amended Complaint in a light most favorable to Stolz, the Court finds Stotz's breach-of-contract claim accrued on February 1, 2024.

22. Because Stoltz filed this action in Delaware on February 13, 2025, Stoltz's breach-of-contract claim is time-barred by the Agreement unless the time limitation provision can be extended.

> ii. *Equitable tolling and the Delaware Savings Statute do not extend the Agreement's time limitation provision.*

23. Stoltz argues its breach-of-contract claims are timely because Stoltz filed its action in North Carolina Superior Court on October 2, 2024.[69] In the alternative, Stoltz argues its claims can be saved through equitable tolling or the Delaware Savings Statute (the "Savings Statute").[70]

---

[67] Am. Compl. ¶ 61 ("In February 2024, Entrata breached the Agreement by refusing to give Stoltz any credits from pre-paid fees incurred when the Hubs had not worked.").
[68] *Id.* ¶38.
[69] Answering. Br. at 12-14; Tr. 50:2-7.
[70] *Id.* at 13-14.

24. Equitable tolling "is a doctrine used by courts to prevent a statute of limitations from running after a claim has accrued."[71] "Delaware courts, both federal and state, have recognized the concept of equitable tolling."[72] In Delaware, "equitable tolling may apply: (1) where the defendant misled the plaintiff, (2) where the plaintiff was prevented from asserting his rights in some extraordinary way, and (3) where the plaintiff has timely asserted his rights mistakenly in the wrong forum."[73]

25. The Saving Statute "provides exceptions to the applicable statute of limitations in certain instances where the plaintiff has filed a timely lawsuit, but is procedurally barred from obtaining a resolution on the merits."[74] The Savings Statute was intended to alleviate the harsh consequences of the statute of limitations when an action, through no fault of the plaintiff, is technically barred by a statute of limitations.[75] The Savings Statute, however, cannot save actions "commenced under

---

[71] *Owens v. Carman Ford, Inc.*, 2013 WL 5496821, at *2 (Del. Super. Sept. 20, 2013) (citing *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005)).
[72] *Id.* at *3 (citing *New Castle Cty. v. Halliburton NUS Corp.*, 111 F.3d 1116 (3d Cir. 1997); *McLeod v. McLeod*, No. N11C-03-111 (Feb. 6, 2013)).
[73] *Id.*
[74] *Reid v. Spazio*, 970 A.2d 176, 180 (Del. 2009) (citing *Vari v. Food Fair Stores, New Castle, Inc.*, 205 A.2d 529, 530 (Del. 1964); *Gosnell v. Whetsel*, 198 A.2d 924, 926 (Del. 1964)); 10 *Del. C.* § 8118(a).
[75] *Marvel v. Prison Ind.*, 884 A.2d 1065, 1067 (Del. Super. 2005) (citing *Giles v. Ridolico*, 140 A.2d 263 (Del. 1958)).

time periods established outside the parameters of Title 10."[76] The Savings Statute also does not apply to "voluntary withdrawal of a complaint."[77]

26.   Neither equitable tolling nor the Savings Statute can be used to toll Stoltz's breach-of-contract claims.

27.   First, none of the three recognized manners in which equitable tolling applies correspond to Stoltz's specific circumstance. Stoltz argues it "mistakenly asserted [its] rights in the wrong forum," but its own pleadings directly contradict this argument.[78] The North Carolina Superior Court never declared Stoltz's claims were in an inappropriate forum, nor could it as Stoltz voluntarily dismissed its own complaint.[79] Stoltz made the decision to forgo pursuing claims in North Carolina,[80] and the doctrine of equitable tolling is not designed to save a party from its own discretionary decision making.

28.   Second, Stoltz misinterprets the scope of the Savings Statute. The time-bar Stoltz seeks to circumvent is contractual, not statutory.[81] Because the Savings Statute only applies to time limitations arising under Title 10,[82] and not by

---

[76] *Christiana Hosp. v. Fattori*, 714 A.2d. 754, 757 (Del. 1998). *See also Nationwide Mut. Ins. Co. v. Am. Ind. Ins. Co.*, 2018 WL 2263653, at *3 (Del. Super. May 17, 2018) ("The Saving Statute only applies to claims commenced within a limitation period set out in Title 10, Chapter 81. . . .")).
[77] *Graleski v. ILC Dover*, 2011 WL 3074710, at *4-5 (Del. July 26, 2011).
[78] Answering Br. at 13; Am. Compl. ¶ 52.
[79] Am. Compl. ¶ 52.
[80] Answering Br. at 14.
[81] Beta Test Addendum § 15(b).
[82] *Christiana Hosp.*, 714 A.2d. at 757.

12

contractual agreement, the Saving Statute is unable to save Stoltz's claims from the Agreement's time limitations for bringing claims.

29. Even if Stoltz's breach-of-contract claim fell under the purview of the Savings Statute, Delaware precedent still renders the Savings Statute inapplicable. The Supreme Court of Delaware has made clear that the Savings Statute does not apply to voluntarily withdrawn complaints.[83] The Court again notes that Stoltz admits its North Carolina complaint was voluntarily dismissed.[84]

30. As the Superior Court of Delaware has held recently, it is "inappropriate to apply the Delaware Savings Statute to save [a plaintiff] from the consequences of his strategic actions" when a plaintiff consciously ignores a forum selection clause.[85] Stoltz filed in North Carolina Superior Court because it believed North Carolina would not enforce the Agreement's forum selection clause.[86] The Court will not remedy Stoltz's strategic gamble and intentional choice to ignore a mutually agreed upon contractual provision.

31. The Court further notes Stolz twice failed to attach its North Carolina complaint as an exhibit: once when filing its original Complaint and once when

---

[83] *Graleski*, 2011 WL 3074710, at *4-5.
[84] Am. Compl. ¶ 52.
[85] *Ney v. 3i Gp. PLC*, 2025 WL 1455872, at *9 (Del. Super. May 21, 2025). *See also Huffington v. T.C. Group, LLC*, 2012 WL 1415930, at *10 (Del. Super. Apr. 18, 2012) ("In the Court's view, it is equally inappropriate to apply the Savings Statute where a plaintiff purposely disregards a forum selection clause.").
[86] Am. Compl. ¶¶ 47-50; Answering Br. at 7-8.

filing its Amended Complaint.[87]  Without attaching its North Carolina complaint, the Court is unable to verify which current claims were included in the North Carolina complaint, and which were not.  Because Stoltz already had an opportunity to amend its pleadings, the Court will not grant additional leave to attach or incorporate the North Carolina complaint.[88]

32.    The Court finds that Stoltz's breach-of-contract claims, which accrued at latest on February 1, 2024, were brought in Delaware over twelve months later on February 13, 2025.  Stoltz's breach-of-contract claims are therefore time-barred by the Agreement.[89]  Because the equitable tolling and the Saving Statute do not apply, Stoltz's breach-of-contract count is **DISMISSED**.

**B. Stoltz cannot state a claim for unjust enrichment.**

33.    Stoltz pleads its unjust enrichment claims in the alternative to its breach-of-contract claims.[90]

34.    Delaware law is clear that recovery under an unjust enrichment theory is inappropriate when a contractual agreement governs the relationship between the

---

[87] *See* Compl. (having no North Carolina complaint attached as an exhibit); *see also* Am. Compl. (having no North Carolina complaint attached as an exhibit).
[88] Tr. 50:8-23.
[89] The Court will therefore not consider the merits of the breach-of-contract claims.
[90] Am. Compl. ¶¶ 66-71.

parties.[91] Neither party disputes that the Agreement governs their relationship,[92] precluding Stoltz's unjust enrichment claims from moving forward.

35. Nonetheless, Stoltz argues its unjust enrichment claims should survive because its claim is brought "in the alternative."[93] Stoltz contends its unjust enrichment claims survive as an alternative to its breach-of-contract claims, citing *Tsionas v. JG*, where the Court of Chancery permitted unjust enrichment claims to survive because "[f]act issues remain as to the precise parameters of the [P]arties' [A]greement."[94]

36. According to Stoltz, there are three such disputes before the Court: "1) whether the wiring renovations became a precondition for the delivery of any Hubs; 2) which party was responsible for the delays in wiring renovations; and 3) whether the Agreement allowed Entrata to keep pre-paid amounts for Hubs despite Agreement language providing that "[i]n no event shall [Stoltz] be obligated to purchase such Hubs."[95]

37. None of these disputes justify Stoltz's unjust enrichment claims surviving. Unlike in *Tsionas*, Stotz's unjust enrichment claim does not concern the

---

[91] *Wells Fargo Bank, N.A. v. Estate of Malkin*, 278 A.3d 53, 69 (Del. 2022) (quoting *Metcap Secs. LLC v. Pearl Senior Care, Inc.*, 2009 WL 513756, at *5 (Del. Ch. Feb. 27, 2009), *aff'd*, 977 A.2d 889 (Del. Aug. 13, 2009) (TABLE)).
[92] Opening Br. at 21; Answering Br. at 25.
[93] Answering Br. at 24-25.
[94] *Id*. at 25; *Tsionas v. JG, LLC*, 2023 WL 11283815, at *4 (Del. Ch. May 9, 2024) (citations omitted).
[95] Answering Br. at 25.

precise parameters of the Agreement.[96] Stoltz has already acknowledged that these disputes—which are largely repeated from Stoltz's breach-of-contract claims—are governed by the Agreement. The disputes rather concern the parameters of Stoltz's right to recovery *under* the Agreement, which can only be determined through contract interpretation.

38.     Stoltz's unjust enrichment count is therefore **DISMISSED**.

**C. Stoltz's fraud claims are either time-barred or fail to state a claim.**

39.     Stoltz's fraud claims concern Entrata's alleged misrepresentations toward Stoltz over several years.[97] Stoltz alleges three instances where Entrata made fraudulent misrepresentations to Stoltz.[98]

40.     Stoltz first alleges that on April 29, 2021, Norton "represented to Stoltz in verbal and written statements that re-wiring could be completed at all three Properties within two months, Entrata could deliver Hubs by June or July 2021, and Best Buy could install the Hubs and other smart devices at that time"[99] (the "2021

---

[96] In *Tsionas*, the plaintiff alleged the defendant had been unjustly enriched by inducing the plaintiff to dissociate from a partnership so the defendant could take an opportunity for himself that would otherwise be shared by the partnership. *Tsionas*, 2023 WL 11283815, at *4. The court declined to dismiss the unjust enrichment claim because "[f]act issues remain as to the precise parameters of the parties' agreement and whether recovery on an unjust enrichment theory is appropriate." *Id.* Here, by contrast, the Agreement contemplates each of the subjects Stoltz identifies as having unresolved factual issues. Stoltz admits as much by providing largely identical pleadings for its breach-of-contract and unjust enrichment counts.

[97] Am. Compl. ¶¶ 72-94.

[98] *Id.*

[99] *Id.* ¶ 74.

Norton Statements"). Stoltz contends Entrata knew this timeline was unrealistic and that Entrata's employees were making these promises.[100] Stoltz argues these statements were intended to deceive Stoltz into believing Hubs could be installed in a short period of time.[101]

41. Stoltz next alleges in June 2022, "Norton again misrepresented that Entrata had sufficient Hubs to install in at least two out of the three Properties"[102] (the "2022 Norton Statements"). Stoltz contends Entrata hid material facts related to the number of available Hubs it could deliver and defects rendering the Hubs unusable.[103] Stoltz argues Entrata's false statements and omissions were "calculated to induce Stoltz to stay in the Agreement . . . and to make additional material investments towards implementing the Hubs[.]"[104]

42. Stoltz finally alleges that between April 2021 and March 2023, "Entrata made additional false representations to Stoltz that the Hubs would soon be delivered, and that the product would be ready for testing upon delivery"[105] (the "2021-2023 Statements").

43. The required elements for a fraud claim are "(1) a false representation made by the defendant; (2) the defendant's knowledge or belief that the

---

[100] *Id.* ¶¶ 78-79.
[101] *Id.* ¶ 76.
[102] *Id.* ¶ 80.
[103] *Id.* ¶¶ 82-83.
[104] *Id.* ¶ 85.
[105] *Id.* ¶ 90.

representation was false, or reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) causally related damages to the plaintiff."[106] Fraud may occur not just from overt representations, but "through deliberate concealment of material facts, or by silence in the face of a duty to speak."[107]

44. The Court will address each of Stoltz's three fraud allegations separately.

*i. Stoltz's fraud claim for the 2021 Norton Statements is DISMISSED.*

45. The Court first examines whether Stoltz has properly pled a fraud claim for the 2021 Norton Statements.

46. The Court need not address the merits of Stoltz's fraud claim for the 2021 Norton Statements because it is time-barred by Delaware's statute of limitations on fraud.[108]

47. The statute of limitations for bringing a fraud claim in Delaware is three years.[109] Under Delaware law, a claim for fraud "accrues at the time of the wrongful

---

[106] *Vichi v. Koninklijke Philips Elec., N.V.*, 85 A.3d 725, 773 (Del. Ch. 2014).

[107] *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

[108] 10 *Del. C.* § 8106. Entrata argues the one-year contractual limitations period applies to all claims in the Amended Complaint, including the fraud claims. Op. Br. at 13-17. Because the fraud claims are time barred even under the three-year statute of limitations, the Court need not address whether the one-year contractual imitations period applies to the fraud claims.

[109] *Vichi v. Koninklijke Philips Electronics N.V.*, 62 A.3d 26, 42 (Del. Ch. 2012) (citing 10 *Del. C.* § 1806)).

act, even if the plaintiff is unaware of the cause of action."[110] Delaware courts have consistently held that claims of fraud based on misrepresentations accrue when the misrepresentations are made.[111]

48. Delaware has long held that fraudulent concealment of a cause of action "is an independent ground for tolling a statute of limitations."[112] Fraudulent concealment suspends the applicable statute of limitation only until the plaintiff's "rights are discovered or could have been discovered by the exercise of reasonable diligence."[113]

49. Fraudulent concealment "requires that something affirmative be done by a defendant, some 'actual artifice' which prevents a plaintiff from gaining knowledge of the facts, or some misrepresentation which is intended to put the plaintiff off the trail of inquiry."[114] A defendant's [m]ere silence is insufficient to establish fraudulent concealment."[115]

---

[110] *Puig v. Seminole Night Club, LLC*, 2011 WL 3275948, at *4 (Del. Ch. July 29, 2011) (internal quotations omitted) (citing *Smith v. Mattia*, 2010 WL 412030, at *3 (Del. Ch. Feb. 1, 2010); *In re Coca-Cola Enters., Inc.*, 2007 WL 3122370, at *5 (Del. Ch. Oct. 17, 2007)).

[111] *See, e.g.*, *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *14 (Del. Ch. Dec. 23, 2008); *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *7 (Del. Super. Feb. 15, 2013); *Edwards v. GigAquisitions2, LLC*, 2025 WL 2092832, at *14 (Del. Ch. July 25, 2025).

[112] *Halpern v. Barran*, 313 A.2d 139, 143 (Del. Ch. 1973) (citing *Lieberman v. First Nat'l Bank*, 8 Del. C. 519 (Del. 1900); 51 Am.Jur.2d, Limitations of Actions § 147).

[113] *Giordano v. Czerwinski*, 216 A.2d. 874, 229 (Del. 1966) (citations omitted).

[114] *Halpern*, 313 A.2d at 143 (citing *Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254 (Del. Super. 1969); 51 Am.Jur.2d, Limitations of Actions § 148).

[115] *LGM Hldgs., LLC v. Schurder*, 340 A.3d 1134, 1148 (Del. 2025) (citing *AssuredPartners of Virginia, LLC v. Sheehan*, 2020 WL 2789706, at *17 (Del. Super. May 29, 2020)).

19

50. Fraudulent concealment can only permit tolling "where the plaintiff has pled the conditions comprising the fraudulent concealment, and how such conduct prevented him from discovering his claim, with the same particularity as would be required to plead an affirmative claim of fraud."[116]

51. Stoltz's fraud claim is based on the alleged fraudulent misrepresentation by Entrata—through Norton—that re-wiring at all three Properties could be completed by June or July 2021, at which time Best Buy could install Hubs and other smart devices.[117] According to the Amended Complaint, the alleged misrepresentation was made on April 29, 2021.[118] Delaware precedent therefore supports that Stoltz's fraud claim accrued on April 29, 2021.[119]

52. The Court has already determined that Stoltz's claims were brought on February 13, 2025. Thus, unless a tolling doctrine applies, Stoltz's fraud claim falls outside Delaware's three-year statute of limitations for fraud claims.

53. Stoltz attempts to save its fraud claim regarding the 2021 Norton statements, alleging Entrata intentionally concealed information related to the

---

[116] *Winklevoss Cap. Fund, LLC v. Shaw*, 2019 WL 994534, at *9 (Del. Ch. Mar. 1, 2019) (citations omitted).
[117] Am. Compl. ¶ 74.
[118] *Id.*
[119] *See, e.g.*, *Winner Acceptance Corp.*, 2008 WL 5352063, at *14; *Van Lake,* 2013 WL 1087583, at *7; *Edwards*, 2025 WL 2092832, at *14.

20

proposed timeline for rewiring and manufacturing delays.[120]  Stoltz's effort falls well short.

54.     First, Stoltz fails to plead with particularity how the alleged fraudulent concealment prevented Entrata from discovering its claim.  Simply alleging Entrata "concealed information" is not enough.  Stoltz does not provide the Court with the specific information that was concealed, who concealed the information, or why such information was undiscoverable but for the alleged concealment.  Tolling based on fraudulent concealment is unavailable to Stoltz in the absence of this particularity.[121]

55.     Second, fraudulent concealment can only toll Stoltz's claim until Stoltz's "rights are discovered or could have been discovered by the exercise of reasonable diligence."[122]

56.     Stoltz fails to explain why it did not or could not discover the proposed re-wiring timeline was unrealistic in July 2021.  Re-wiring was clearly still taking place when the proposed timeline for completion passed,[123] and at the very least, Stoltz could have reasonably discovered how unrealistic the timeline was based on the progress of the renovations to that point.

---

[120] Am. Compl. ¶ 79.
[121] *Winklevoss Cap. Fund, LLC*, 2019 WL 994534, at *9.
[122] *Giordano*, 216 A.2d. at 229.
[123] Am. Compl. ¶ 24.

57.     Stoltz also fails to explain why it did not or could not discover that Entrata was experiencing manufacturing delays in July 2021. No Hubs had been delivered as Stoltz anticipated at that point,[124] and even though re-wiring was still taking place, Stoltz could have inquired as to the status of Hub manufacturing. Stoltz also could have requested the anticipated Hubs be delivered before re-wiring was complete. Instead, Stoltz waited until re-wiring was complete to assess the status of Hub delivery.[125]

58.     The Court finds that the unrealistic timeline for re-wiring and manufacturing delays could at the very least have been discoverable with reasonable diligence in July 2021. Even if the Court were to find tolling based upon fraudulent concealment, Stoltz's fraud claim would remain outside of Delaware's three-year statute of limitations for fraud claims, as the Complaint was not filed until February 2025.

59.     Stoltz's fraud claim for the 2021 Norton Statements is therefore **DISMISSED.**

*ii.     Stoltz's fraud claim for the 2022 Norton Statements is DISMISSED.*

60.     The Court next examines whether Stoltz has properly pled a fraud claim for the 2022 Norton Statements.

---

[124] *Id.* ¶ 31.
[125] Norton Update Emails at 9.

61.    Stoltz fails to plead all five elements of a fraud claim for the 2022 Norton statements.  Stoltz's fraud claim fails to make it past the first element for a fraud claim—a false representation.

62.    Stoltz, in its Amended Complaint, selectively quotes Norton's 2022 email.[126]  Stoltz only quotes the portion of the email where Norton projects being able to provide hardware and Hubs for two of three Properties by July 2022.[127]  Stoltz conveniently omits the portion where Norton explicitly conveys Entrata was experiencing worldwide supply chain issues due to COVID-19.[128]  Stoltz also omits a crucial qualifier to Norton's projections: "but with how hectic things are *we can't make any guarantees*."[129]

63.    Norton's qualifier prevents his email from being a false representation.  Norton represents nothing definitive on behalf of Entrata and expressly communicates why Entrata cannot make guarantees at that time.  The Court cannot enforce a guarantee or promise that was never made, and if Stoltz relied on these qualified statements, it must bear the consequences.

64.    Stoltz's fraud claim for the 2022 Norton Statements is therefore **DISMISSED.**

---

[126] Am. Compl. ¶ 28.
[127] *Id.*
[128] Norton Update Emails at 3.
[129] *Id.* (emphasis added).

### iii. *Stoltz's fraud claim for the 2021-2023 Statements is DISMISSED.*

65.  The Court finally examines whether Stoltz properly pled a fraud claim for the 2021-2023 Statements.

66.  Stoltz has not pled a fraud claim for the 2021-2023 Statements with particularity demanded under Delaware law.[130]

67.  Stoltz simply avers Entrata made multiple misrepresentations about Hub delivery and readiness over a two-year period.[131]  Other than Norton and his previously discussed statements, Stoltz fails to identify who else was making these statements.[132]  Stoltz also fails to plead the contents of these statements beyond a broad categorical topic.[133]

68.  Delaware law employs the particularity requirement for fraud claims so defendants have sufficient notice to prepare their defenses.[134]  Entrata has not been provided adequate notice with this fraud claim, nor has the Court received enough information to understand the nature of Stoltz's fraud claim for the 2021-2023 Statements.

69.  Stoltz's fraud claim for the 2021-2023 Statements is therefore **DISMISSED.**

---

[130] Super. Ct. Civ. R. 9(b).
[131] Am. Compl. ¶ 90.
[132] *Id.*
[133] *Id.*
[134] *Murray*, 2021 WL 2742595, at *2.

**D. Entrada's Motion to Dismiss Stoltz's count for violations of North Carolina's Unfair and Deceptive Trade Practices Act is GRANTED in part, DENIED in part.**

70.    Stoltz's claims for violations of North Carolina's Unfair and Deceptive Trade Practices Act ("NC UDTPA claims") concern Entrata's alleged conduct to towards Stoltz constituting unfair and deceptive trade practices.  Stoltz alleges several of Entrata's actions are unfair and deceptive trade practices under North Carolina's Unfair and Deceptive Trade Practices Act ("NC UDTPA").[135]

71.    Stoltz contends two of these pre-Agreement Entrata actions— representing that the Entratamation product was ready for "beta testing" and concealing Hubs could not be implemented without access to a property-wide internet network—were part of Entrata's "general pattern or practice to get customers to commit to the Entratamation product, and fund its ongoing development, when the Entratamation product was far from ready."[136]

72.    Stoltz also contends Entrata employed two more unfair and deceptive trade practices during the Parties' relationship.  Stoltz first asserts Entrata misrepresented that Hubs would be delivered to Stoltz by July 2021.[137]  Stoltz then asserts that Entrata, "[a]fter cancelling the failed Entratamation product, [] acted unfairly by shifting the costs for its failed product to [Entrata]'s customers without

---

[135] Am. Compl. ¶¶ 95-109.
[136] *Id.* ¶¶ 96-97, 100.
[137] *Id.* ¶ 101.

justification, reversing its earlier policy of providing refunds for the product, and forcing innocent customers to bring suit to recoup payments made to Entrata for a product that it never delivered."[138]

73.    Entrata argues Stoltz's NC UDTPA claims should be dismissed for several reasons.  Many of the reasons overlap with those asserted for Stoltz's fraud claims, as Entrata contends Stoltz's fraud claims and NC UDTPA claims are both based on misrepresentations.[139]

74.    Entrata first contends Stoltz has not pled justifiable reliance for its NC UDTPA claims.[140]  Entrata then contends Stoltz did not rely on the 2022 Norton statements.[141]  Entrata next contends Stoltz's NC UDTPA claims are required to be stated with particularity, and Stoltz's NC UDTPA claims are not.[142]  Finally, Entrata contends Stoltz's NC UDTPA claims are time-barred.[143]

75.    The NC UDTPA declares as unlawful "unfair or deceptive acts or practices in or affecting commerce."[144]  Commerce includes "all business activities."[145]  A practice is unfair when "it offends established public policy as well

---

[138] *Id.* ¶ 104.
[139] Opening Br. at 28.
[140] *Id.* at 31-33.
[141] *Id.* at 33-34.
[142] Reply Br. at 17.
[143] *Id.* at 8-12.
[144] N.C. GEN. STAT. § 75-1.1(a) (2020).
[145] *Izzy Air, LLC v. Triad Aviation, Inc.*, 887 S.E.2d 65, 71 (N.C. Ct. App. 2022) (citing N.C. GEN. STAT. § 75-1.1(b) (2020)).

as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."[146] A practice is deceptive if "it has the capacity or tendency to deceive."[147]

76. The Court finds that most of Stoltz's stated NC UDTPA claims are time-barred by Delaware's three-year statute of limitations on fraud. Because the Agreement was signed in April 2021, Stoltz's two claims based on pre-Agreement misrepresentations were time-barred even before Stoltz filed in North Carolina Superior Court on October 2, 2024.[148] The Court previously determined the claim based on misrepresentations that Hubs would be delivered by July 2021 is time-barred.[149] These three claims therefore do not survive under Stoltz's NC UDTPA count.

77. Stoltz states only one potential NC UDTPA claim that survives because it is both pled with particularity and cannot yet be determined time-barred. That claim concerns Entrata's alleged representations that Stoltz would be entitled to a credit or refund before cancelling Entratamation (the "refund claim").[150]

---

[146] *Izzy Air*, 887 S.E.2d 65, 71 (N.C. Ct. App. 2022) (citing *Walker v. Fleetwood Homes N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007)).
[147] *Id*.
[148] Am. Compl. ¶¶ 18, 47.
[149] *See* discussion *infra* Section II.C.i.
[150] Am. Compl. ¶ 104. The Court observes that Stoltz's Amended Complaint often interchanges the words "credit" and "refund." For purposes of this section and for simplicity, the Court will only use the word "refund."

78. The refund claim correctly identifies a trade practice potentially falling under the NC UDTPA. The misrepresentations and corresponding actions alleged in the refund claim could be considered both an unfair and deceptive trading practice. Such a practice also has both the capacity and tendency to deceive consumers. Because the practice is a "business activity," it would be considered in or affecting commerce.

79. Stoltz also states the refund claim with particularity. Stoltz identifies who made the alleged misrepresentations,[151] when they were made,[152] the contents of the misrepresentations,[153] the corresponding actions taken by Entrata,[154] and the approximate monetary amount Entrata gained from the unfair or deceptive trade practice.[155]

80. The Court also cannot yet determine that the refund claim is time-barred.[156] The Parties disagree over what types of claims (other than the breach-of

---

[151] *Id.* ¶¶ 41-42.
[152] *Id.*
[153] *Id.*
[154] *Id.* ¶¶ 43-45.
[155] *Id.* ¶¶ 25, 36.
[156] North Carolina law requires civil claims under the NC UDTPA be brought within four years after the cause of action accrues. N.C. GEN. STAT. ANN. § 75-16.2 (West 2025). As previously discussed, Delaware employs a more stringent three-year statute of limitations. Because Delaware courts are statutorily required to apply the shortest statute of limitations between Delaware and foreign law, Delaware's statute of limitations will apply to this claim. 10 *Del. C.* § 8121 (West 2025). The alleged misrepresentations for this claim were made as early as November 2023 and as late as December 2023. *Id.* ¶¶ 41-42. Even with a more stringent statute of limitations employed, Stoltz's claim is not statutorily time-barred because the claim would have accrued when the alleged misrepresentations were in 2023. The only remaining way the claim could be time-barred is through the Agreement's time limitation provision.

contract claims) are contemplated by the Agreement's time limitation provision.[157] Entrata reads the provision as applying to all types of claims, while Stoltz reads the provision as applying specifically to contract claims.[158]

81. The Court will not resolve this contractual interpretation dispute on a motion to dismiss.

82. Given the express language of the time limitation provision and the entire construction of Section 15, both parties present the Court with reasonable contractual interpretations. The express language of the time limitation provision, which does not differentiate between claims, suggests it is not just contractual claims that are subject to time-bar.[159] Yet when Section 15 is read in its entirety, contractual breaches are clearly contemplated in other provisions, suggesting a narrower interpretation may be appropriate.[160]

83. The Supreme Court of Delaware has held that a "trial court cannot choose between two differing reasonable interpretations of ambiguous provisions" when deciding a motion to dismiss.[161] Dismissal pursuant to 12(b)(6) is appropriate

---

[157] Opening Br. at 13-17; Answering Br. at 9-11.
[158] Opening Br. at 13-14; Answering Br. at 9.
[159] *Id.*
[160] *Id.* § 15(a), (c)-(f).
[161] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003) (citing *Vanderbilt Income and Growth Assocs. V. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996)).

"only if the defendant's interpretation is the *only* reasonably construction as a matter of law."[162]

84. Because the Parties both present reasonable interpretations of the Agreement's time limitation provision, the Court cannot find that Stoltz's refund claim is time-barred by the Agreement.

85. The Court finds that Stoltz has pled a potential NC UDTPA claim and has done so with particularity. The Court also finds that this claim cannot yet be determined as time-barred under the Agreement.

86. Dismissal of Stoltz's NC UDTPA count is therefore **GRANTED in part, and DENIED in part**.

### E. Stoltz's count for violations of Delaware's Uniform Deceptive Trade Practices Act is DISMISSED.

87. Stoltz's claims for violations of Delaware's Uniform Deceptive Trade Practices Act ("DTPA claims") concern Entrata's alleged conduct towards Stoltz constituting deceptive trade practices. Stoltz alleges several of Entrata's actions are deceptive trade practices under Delaware's Uniform Deceptive Trade Practices Act ("UTPA").[163]

88. Stoltz's claim fails at the outset. "Delaware law presumes that 'a law is not intended to apply outside the territorial jurisdiction of the State in which it is

---

[162] *Id.*
[163] Am. Compl. ¶¶ 110-115.

enacted.'" *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 97 (Del. Ch. 2020) (quoting *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, 1988 WL 116423, at \*2 (Del. Super. Oct. 21, 1988)).   The conduct alleged in the Amended Complaint occurred outside Delaware.  Thus, because the UTPA "lacks any jurisdiction that the legislature intended for it to apply outside the territorial jurisdiction of Delaware," Stoltz fails to state a claim under the UTPA.

Stoltz's UTPA count is therefore **DISMISSED**.

## F. Entrata's Motion to Dismiss the Amended Complaint is GRANTED in part and DENIED in part.

89.     The Court grants Entrata's Motion to Dismiss for Stoltz's breach-of-contract count, unjust enrichment count, fraud count, and UTPA count.  The Court denies, in part, Entrata's Motion to Dismiss for Stoltz's NC UDTPA count.

90.     Entrata's Motion to Dismiss the Amended Complaint is therefore **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

31